**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND EMPLOYERS MIDWEST HEALTH BENEFITS FUND and LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NOVARTIS PHARMACEUTICALS CORP., NOVARTIS AG, and NOVARTIS CORPORATION,<br><br>Defendants. | Civil Action No. 1:15-cv-12732-ADB |

**JOINT STATEMENT OF PLAINTIFFS AND DEFENDANTS**
**NOVARTIS PHARMACEUTICALS CORPORATION AND**
**NOVARTIS CORPORATION PURSUANT TO JULY 16, 2015 ORDER**

Pursuant to the Court's July 16, 2015 Order, Plaintiffs United Food and
Commercial Workers Unions and Employers Midwest Health Benefits Fund and Laborers
Health and Welfare Trust Fund for Northern California (collectively, "Plaintiffs") and
Defendants Novartis Pharmaceuticals Corporation ("NPC") and Novartis Corporation
("NC") hereby submit this Joint Statement regarding the proposed schedule in this case.[1]

## I.    STATUS OF LITIGATION

A brief procedural history of the litigation to date is as follows:

---

[1]    Plaintiffs served Novartis AG on July 22, 2015; under the Rules, their answer or
other responsive pleading is due on or before August 12, 2015.  Counsel for Novartis AG
have identified themselves to Plaintiffs' counsel and were provided with a draft of this
Joint Statement.

| Date | Event |
|------|-------|
| June 22, 2015 | Class Action Complaint filed |
| June 24, 2015 | Defendant Novartis Pharmaceuticals Corporation, a Delaware Corporation,  served |
| June 26, 2015 | Defendant Novartis Corporation, a New York corporation, served |
| July 1, 2015 | Proofs of service on U.S. defendants filed |
| July 2, 2015 | Plaintiffs provide courtesy copies of Initial Disclosures and First Request for Production of Documents to Defendants Novartis Pharmaceuticals Corporation and Novartis Corporation, along with a proposed Protective Order governing Confidentiality of Documents, a proposed stipulated order governing Electronically Stored Information (ESI) Protocol |
| July 21, 2015 | Counsel for NPC and NC meet and confer with counsel for Plaintiffs to discuss plan for discovery under Rule 26(f) (Defendant Novartis AG, which had not yet been served, did not participate) |
| July 22, 2015 | Plaintiffs served Defendant Novartis AG, a Swiss Corporation |
| July 29, 2015 | Time for Defendants NPC and NC to answer or move with respect to the Complaint, pursuant to Stipulation; NPC and NC have advised Plaintiffs that they will be filing a motion to dismiss by this date. |
| August 12, 2015 | Time for Defendant Novartis AG to answer or move with respect to the Complaint |

## II.        AGENDA FOR RULE 16(B) CONFERENCE

**A.        Plaintiffs propose the following agenda items:**

- Determination whether expedited injunction track will be pursued

2

- Pre-trial schedule (for separate injunction and damages tracks)

- Proposed Document Management Orders

- Proposed early exchange of essential documents

**B.   Defendants NPC and NC propose the following agenda items:**

- Discussion of whether Plaintiffs' proposed expedited schedule is necessary or appropriate under the circumstances.

- Discussion of an appropriate briefing schedule for the motion to dismiss to be filed by Defendants NPC and NC.

- Discussion of holding a full Local Rule 16(a)(1) Conference once all of the parties have appeared in the action.[2]

- Discussion of an appropriate case management schedule, including the requirements for the patent aspects of the case, in the event that motions to dismiss are denied in whole or in part.

### III.   PLAINTIFFS' STATEMENT OF THE CASE

Plaintiffs[3] filed an antitrust class action on behalf of a proposed class of purchasers of the prescription drug Gleevec (imatinib mesylate), seeking to prevent the unlawful delay of generic entry into the U.S. market for Gleevec.   The purchasers allege that the defendants engaged in frivolous patent litigation with a prospective competitor in order to

---

[2]   Defendant Novartis AG, a Swiss corporation with its principal place of business located in Basel, Switzerland, was served under the Hague Convention on July 22, 2013.   As a result, its response to the Complaint is due August 12, 2015.

[3]   Plaintiffs are United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund ("UFCW Fund"), and Laborers Health and Welfare Trust Fund for Northern California ("Laborers Fund") (collectively "plaintiffs" or "purchasers"), proceeding on behalf of themselves and others similarly situated.

delay generic competition in the U.S. market for imatinib mesylate in violation of Section 2 of the Sherman Act.

This is an antitrust case, not a patent infringement case.  The issue is whether Novartis unlawfully monopolized the market for imatinib mesylate by frivolously prosecuting patent litigation against generic manufacturer Sun on the basis of a patent that it knew, in the stark light of patent infringement litigation, and regardless of claim construction,[4] would be found to be invalid.  Plaintiffs allege that the defendants' patent infringement suit against generic manufacturer Sun was a sham because it was both motivated by a desire to delay competition and was objectively baseless (*i.e.*, no reasonable pharmaceutical manufacturer would – after discovery and expert testimony – realistically expect the Court to hold that Novartis's patents were valid).[5]  And that the seven-month delay resulting from that litigation and eventual settlement will injure (and now has injured) purchasers of Gleevec.

Plaintiffs have limited our summary of the case to two paragraphs.  Plaintiffs' allegations are set out in more detail in the complaint**.**

This kind of antitrust case, premised on sham patent infringement litigation filed by brand drug companies, is not new.  At least a half dozen similar sham litigation or Walker Process theory antitrust cases have been litigated in the past several years.[6]  None of the pretrial schedules for those cases included Markman hearings, invalidity contentions.

---

[4]  Plaintiffs' complaint does not allege that Sun's product did not infringe Novartis's patent.  Rather, plaintiffs' sham claim rests on allegations of invalidity.

[5]  *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 135 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 670 (1965); and *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries*, 508 U.S. 49 (1993).

[6]  *See, e.g., In re Relafen Antitrust Litig.,* No. 01-cv-12239 (D. Mass.) (Young, J.); *In re Augmentin Antitrust Litig*., No. 02-cv-00442 (E.D. Va.); *In re Effexor XR Antitrust*

At this time, the purchasers seek declaratory and injunctive relief to prohibit defendants from enforcing any agreements (including the terms of their 2014 settlement agreement with Sun Pharma Global FZE) that would inhibit generic competition after the July 5, 2015, expiration of U.S. Patent No. 5,521,184.

Plaintiff purchasers seek permanent injunctive relief.  But, according to plaintiffs' allegations, damages have been accruing since July 5.  If plaintiffs' injunctive claims are not dealt with quickly, it is likely that this action will morph into one seeking damages.

Given this reality, Plaintiffs believe that an expedited litigation schedule for purchasers' injunctive relief claims, leading to a November 2015 trial, is the most efficacious plan for resolving the present dispute.  An expedited injunctive relief track eliminates the need to conduct class certification proceedings, take discovery relevant to proof and quantification of damages, engage in dispositive motion practice, and empanel a jury.  But Plaintiffs recognize that the Court's calendar and other commitments and the defendants' preference may point in a different direction.  Plaintiffs therefore provide two alternative proposals for scheduling and case management:  an expedited permanent injunction track and a damages track.  Each accomplishes all necessary steps of the litigation.

A.    **Injunction Track**

In the event the Court is inclined to entertain Plaintiffs' request for an expedited permanent injunction track, there is one core issue that needs to be decided:  Was

---

*Litig.*, No 11-5479 (D.N.J.); *In re Wellbutrin SR Antitrust Litig.*, No. 04-cv-5898 (E.D. Pa.); *In re Metoprolol Succinate Direct Purchaser Antitrust Litig. ("Toprol"),* No. 06-cv-52 (D. Del.); *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-02431 (E.D. Pa.); *In re OxyContin Antitrust Litig.*, MDL No. 1603 (S.D.N.Y.); *In re Tricor Indirect Purchasers Antitrust Litig.*, No. 05-cv-0360 (D. Del.); *American Sales Company, LLC v. Pfizer Inc. ("Celebrex")*, No. 2:14-cv-00361 (E.D. Va.).

5

Novartis's selection of a non-needle form of imatinib mesylate in the mid-1990s a patentable "invention"?  Plaintiffs believe that this issue can be discovered, and decided, by November 2015.[7]

A narrow universe of documents (laboratory notebooks, meeting minutes) and a short list of fact witnesses (inventors) will provide all the information necessary to enable expert witnesses to opine on the novelty *vel non* of the "beta-crystal" form of the drug.  The remaining evidence required for an expedited trial regards the immediacy and irreparability of the harm to the named Plaintiffs, for which only purchasing, pricing, and forecasting data are needed.

Given the injunctive nature of this case, and that there is no right to a jury trial of the claims asserted in the complaint, Plaintiffs believe that filing motions under Rule 12 or Rule 56(a) is not efficient.  The Parties should stipulate that issues of law or the sufficiency of the pleadings shall be addressed as motions *in limine* preceding the trial.

A prompt trial is important; Gleevec is a lifesaving drug and members of the class, including patients, will be constrained in obtaining less expensive generic versions of the drug in the absence of an injunction.

Plaintiffs' proposed schedule for the injunction track is set forth in Section V.A below.

**B.**     **Damages Track**

Should the Court determine that a trial on Plaintiffs' request for permanent injunctive relief cannot be adjudicated in 2015, Plaintiffs expect to file an amended

---

[7]     As discussed during the Rule 26(f) conference among Plaintiffs, NPC and NC, Plaintiffs will seek leave to file an amended complaint including claims for damages in the event that trial on the request for permanent injunctive relief cannot be held during Calendar Year 2015.

complaint adding claims for damages under the Sherman and Clayton Antitrust Acts and potentially joining additional defendants.  In that case, Plaintiffs will need a full complement of discovery and anticipate filing motions for class certification and for summary judgment in accordance with the schedule set forth in Section V.B below.

## IV.    DEFENDANTS NPC AND NC'S STATEMENT OF THE CASE

Plaintiffs' complaint purports to state an antitrust claim based on defendants' alleged enforcement of an issued and outstanding patent that Plaintiffs claim was invalid. To establish that claim, and overcome a patent owner's Constitutional right to petition the government through litigation, a right that confers immunity from suit under the antitrust laws, Plaintiffs must first establish that the patent is invalid by clear and convincing evidence.  Then Plaintiffs must also prove that the litigation was "objectively baseless" (*i.e.*, that no reasonable patent owner would believe that it might win) and "subjectively baseless" (*i.e.*, that the patent owner believed that it would certainly lose but litigated anyway, merely to use the process to delay competition).  The Complaint does not specify which of the three named defendants allegedly did what.  Rather, it defines all three collectively as "Novartis" and alleges generally that "Novartis" (and/or "defendants") took the complained-of actions.[8]  Plaintiffs' Statement of the Case above similarly improperly refers to all three defendants as "Novartis" or "defendants."

---

[8]    Novartis Pharmaceuticals Corporation is a Delaware corporation with its principal place of business in East Hanover, New Jersey in the business of manufacturing, marketing and selling brand name prescription drugs in the United States.  Novartis Corporation is a New York corporation with its principal place of business in New York City, and ultimate U.S. parent company of NPC and several other U.S. companies.  It does not manufacture, market or sell anything.  Novartis AG, a Swiss holding company that does not manufacture, market or sell any products in the United States, has just been served, is evaluating its response to the Complaint and reserves all rights and defenses.

There is no justification for Plaintiffs' proposed "Expedited Injunction Track" schedule.  As explained below, (1) Plaintiffs' claimed urgency is self-manufactured, (2) monetary damages would be appropriate compensation for any alleged injury, and (3) before any relief would be appropriate, Plaintiffs' allegations require litigating both patent validity and antitrust issues, which cannot be realistically achieved within the Plaintiffs' schedule without substantial impairment of NPC's and NC's rights.

## A.      **Background**

### 1.      **Gleevec® and the Patents at Issue**

Gleevec®, the first oncology treatment designed to target only cancerous cells, was first approved by the Federal Drug Administration ("FDA") in capsule form on May 10, 2001.  There are several patents on the technology embodied in Gleevec®, including U.S. Patent No. 5,521,184 (the "'184 Patent"), a compound patent on the active ingredient, imatinib, which expired on July 4, 2015[9]; and patents on polymorphic forms of the mesylate salt of the imatinib active ingredient, U.S. Patent 6,894,051 (the "'051 Patent") and U.S. Reissue Patent RE43,932 (the "RE932 Patent") (collectively, the "Polymorph Patents"), which expire in 2019.[10]   Both of the Polymorph Patents are unexpired, valid, and enforceable, and have never been held invalid by any court or administrative body.

---

[9]     The '184 patent technically expired on January 4, 2015, but received an additional six months of pediatric exclusivity under 21 U.S.C. § 355a.  In this document, Defendants NPC and NC refer to July 4, 2015 as the "expiration date" of the '184 patent.

[10]     According to the FDA's Orange Book entry for Gleevec®, exclusivity under the '051 Patent will expire on November 23, 2019 and exclusivity under the RE932 Patent will expire on July 16, 2019.  The RE932 Patent is a "reissue" of U.S. Patent No. 7,544,799 (the "'799 Patent"), which is also referenced in Plaintiffs' Complaint.  However, because the '799 Patent was surrendered upon reissue, it is no longer in force.

### 2.   The Sun Litigation and Settlement

In June 2013, Sun Pharma Global FZE ("Sun") sued NPC in the District of New Jersey seeking declaratory judgment of non-infringement and invalidity of the '051 Patent. *Sun Pharma Global FZE v. Novartis Pharmaceuticals Corp.*, 13-cv-3542 (D.N.J.) (the "Sun Litigation"). By May 2014, NPC and Sun had settled the Sun Litigation, prior to any substantive decisions or development of the record on the patent action. Under the settlement agreement, Sun was licensed to launch its generic product on February 1, 2016 – after the expiration of the '184 compound patent on July 4, 2015, but before the expiration of the Polymorph Patents in 2019.[11]

### B.   Plaintiffs' Proposed Schedule Is Unreasonable and Unworkable

Plaintiffs filed the Complaint on June 22, 2015. Plaintiffs allege that a generic version of Gleevec® should have been available on the market on July 5, 2015, the day after the expiration of the '184 Patent. (Compl., ¶ 3.) Specifically, Plaintiffs allege that (a) the '051 and RE932 patents are invalid in light of certain prior art references, (b) that these prior art references were either not disclosed, or belatedly disclosed, to the United States Patent and Trademark Office ("PTO"), and (c) the listing of the Polymorph Patents in the FDA Orange Book and the assertion of these patents against generic drug manufacturers was a "sham." Plaintiffs seek a permanent injunction to prevent NPC from enforcing its settlement agreement with Sun. Plaintiffs do not seek a preliminary injunction.

---

[11] The RE932 patent was not challenged in Sun's declaratory judgment complaint and was not part of the litigation. The settlement, however, permits Sun to enter the market with its generic product three and a half years before exclusivity based on the RE432 patent expires on July 16, 2019.

Plaintiffs urge a "fast-track" process[12] and have proposed an "Expedited Permanent Injunction Track" schedule that is unnecessary, wholly unworkable in light of the several required elements of their claims, and highly prejudicial to NPC and NC.  Under Plaintiffs' proposed "Expedited Permanent Injunction Track" schedule, trial on the "core issue" Plaintiffs cite in their Statement of the Case – "Was Novartis's selection of a non-needle form of imatinib mesylate in the mid-1990s a patentable 'invention'?" – would occur three and one-half months from now.  This is a question of patent validity.  Given that the '051 Patent has never been held invalid by any court, and is entitled to a statutory presumption of validity, any litigation of patent validity should at least include the dates set forth in Appendix E of the Local Rules, which on its face contemplates a substantially longer schedule permitting full development of an appropriate record.  Plaintiffs' proposal would deny NPC and NC the right to develop that record.  Instead, Plaintiffs seek to limit the time for NPC and NC to respond to any discovery requests, conduct the proceedings necessary to a patent litigation, and rush to a predicate determination as to patent validity, which is only the first step to determining whether there is a viable antitrust claim.  Plaintiffs' approach is neither practical nor fair.  Indeed, Plaintiffs make no provision for their providing patent invalidity contentions or for Markman claim construction, as provided for in the "Sample Special Scheduling Order for Patent Infringement Cases," Appendix E to Local Rule 16.6.

---

[12]   In connection with their request for expedited treatment, Plaintiffs filed a motion for an expedited Rule 16 Conference.  The Court denied the motion as moot on July 16, 2015, and directed Plaintiffs, NPC, and NC to file this joint statement regarding a proposed schedule.  NPC and NC's Statement of the Case includes arguments that respond to the points made by Plaintiffs in their brief in support of their motion.

### 1.      Plaintiffs' Claimed Urgency is Self-Manufactured

Plaintiffs allege urgency in litigating this matter in light of Sun's alleged "expected entry date of July 5, 2015" for a generic version Gleevec®.  (See Compl., ¶¶ 5, 277; Memorandum in Support of Plaintiffs' Motion for Expedited Rule 16 Conference ("Pl. Mem.") at 1-2.)  However, as Plaintiffs concede, the settlement in the Sun Litigation was publicly announced in May 2014, more than a year before they filed their Complaint on June 22, 2015.  Plaintiffs may not complain about alleged harm caused by their own – voluntary – delay in filing suit.

### 2.      Monetary Damages Would Compensate for Any Alleged Injury

Plaintiffs acknowledge that their alleged injury resulting from a delay in obtaining the injunctive relief they claim to seek would be monetary.  (Compl., ¶ 5; Plaintiffs' Statement of the Case, above.)  Monetary harm can be remedied by an appropriate award of damages.  Indeed, Plaintiffs have already provided the Court with their own estimate of what their purported prospective damages would be in the event they prevail on their claim for permanent injunctive relief.  (Id., ¶ 346; Pl. Mem. at 3.)  Moreover, as noted in Plaintiffs' Statement of the Case, Plaintiffs can – and "expect to" – file an amended complaint adding claims for damages should the Court deny their request for expedited treatment.  Accordingly, there is no reason to force NPC and NC to trial in three and one-half months.[13]

---

[13]   In their memorandum in support of their motion seeking an expedited schedule, denied as moot by the Court last week, Plaintiffs attempt to justify their request by citing to *New York v. Actavis*, *PLC*, 787 F.3d 638 (2d Cir. 2015) ("*Namenda*"), an entirely irrelevant case.  *Namenda* did not involve any issue of patent validity or a patent litigation settlement agreement; it was a so-called "product hopping" case in which the State of New York sought a preliminary injunction to prevent a drug manufacturer from withdrawing from distribution the original twice-a-day formulation of Namenda

### 3.      Plaintiffs' Allegations Require
### Litigating Both Patent and Antitrust Issues.

This is at heart a patent case masquerading as an antitrust case.  Plaintiffs in the first instance challenge the validity of the Polymorph Patents, as well as NPC's legitimate efforts to enforce those patents.  The Polymorph Patents have never been found invalid in any court or administrative agency and are entitled to a statutory presumption of validity.  As their proposed schedule demonstrates, Plaintiffs must, as a threshold matter, first prove by clear and convincing evidence that the Polymorph Patents are invalid.  As NPC's and NC's motion to dismiss will demonstrate, Plaintiffs ought not be permitted to do so.  But, even if the Court were to permit it, resolution of this issue requires significantly more time than the approximately three and one half months in which Plaintiffs propose to litigate it.  This is reflected in the case schedule entered by the District of New Jersey in the Sun Litigation, which scheduled trial on invalidity and infringement approximately 22 months after Sun's complaint was filed.[14]

---

(Namenda IR), for which the patents were shortly expiring, to force patients to switch to a new once-a-day formulation called Namenda XR, which continued to be patent-protected. *Id*. at 647-49.  Here, Plaintiffs allege that the consequence of NPC's conduct is to force them to continue for seven more months to do exactly what they have been doing for years – paying for Gleevec® prescribed for patients covered by their plans, instead of being able to reduce their costs by encouraging those patients, and their prescribers, to switch to a generic.  (Compl., ¶ 346; Pl. Mem. at 3.)  Unlike in Namenda, no patient's routine will be disrupted, and there will be no barrier to substitution for generic Gleevec® come February 2016, assuming Sun is able to launch one then.  There is thus no impending action that would cause an irreversible change in the structure of the market that Plaintiffs seek to prevent.  Accordingly, Namenda provides no precedent for the unusual and expedited process Plaintiffs seek.

[14]  Sun Litigation, Pretrial Scheduling Order, entered October 9, 2013, Docket Entry 19.  This is consistent with Appendix E of the Local Rules, which sets forth guidelines for deadlines in patent cases.

Further, as Plaintiffs concede, to prevail on the antitrust claims they wish to build on a finding of invalidity, Plaintiffs must show that a reasonable patent holder would not have counterclaimed against Sun for infringement of the '051 Patent.  (*See* Compl., ¶ 6; Pl. Mem. at 5) (the "straightforward and simple" question is:   "Would a reasonable pharmaceutical company in Novartis's position realistically expect to win a patent infringement suit against Sun Pharmaceuticals for infringing the '051 Patent for the mesylate salt and β-crystal form of imatinib?").   To prevail in their claims of "sham" litigation, Plaintiffs must prove that the defense of that patent, and the counterclaim, in the Sun Litigation was "so baseless that no reasonable litigant could realistically expect to secure favorable relief."[15]   And then, even were Plaintiffs to establish these predicates – which they cannot – they would still have to prove that NPC's defense of the patent in the Sun Litigation was "subjectively baseless," *i.e.*, that NPC knew that it had no chance of prevailing in the litigation but litigated anyway, purely to use the litigation process itself to delay or prevent competition.[16]

## V.       THE PARTIES' PROPOSED SCHEDULES

Because the views of Plaintiffs, on the one hand, and NPC and NC, on the other, regarding how the case should proceed are so drastically different, their proposed schedules are presented here separately rather than side-by-side.

---

[15]   *See, e.g., In re AndroGel Antitrust Litig.* (No. II), 888 F. Supp. 2d 1336, 1343 (N.D. Ga. 2012); *Braintree Labs., Inc. v. Schwarz Pharma, Inc.*, 568 F. Supp. 2d 487, 497 (D. Del. 2008).

[16]   *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc*., 508 U.S. 49, 50 (1993).

**A.**   <u>**Plaintiffs' Proposed Expedited Permanent Injunction Schedule**</u>[17]

| DATE | EVENT |
|---|---|
| *July 24, 2015* | *Fact discovery opens;*<br>*Plaintiffs serve First Request for Production of Documents* |
| *July 29, 2015* | *Stipulated deadline for Defendants to file responsive pleadings*<br><br>Defendants serve Initial Disclosures |
| *July 30, 2015* | *Court holds Rule 16 Conference* |
| July 31, 2015 | Plaintiffs produce Purchasers' electronic transaction-level purchase and chargeback data showing purchases of Gleevec from January 1, 2014 to June 15, 2015.  Data will be provided for each plaintiff. |
| August 17, 2015 | Defendants begin rolling document production, including all inventor notebooks and all signed agreements with Sun Global Pharma FZE regarding Gleevec |
| August 28, 2015 | Parties certify that production of documents responsive to initial discovery requests is substantially complete |
| September 2, 2015 | Parties exchange privilege logs |
| September 14, 2015 | Depositions of fact witnesses begin |
| September 18, 2015 | Parties meet and confer regarding challenges to privilege log designations |
| October 5, 2015 | Deadline for Plaintiffs to file an amended complaint;<br><br>Parties make disclosures regarding experts per Fed.R.Civ. P. 26(a)(2) |
| October 12, 2015 | Parties serve expert reports[18] |

---

[17]   Dates previously stipulated or ordered appear in *italic* font.

[18]   Parties will provide three available dates for the deposition of each proposed expert at the time of serving the report.  Supplements to expert reports, not to exceed five pages in length, may be submitted in the event that any additional documents or testimony is produced after October 9, 2015 and before the close of discovery.  No rebuttal expert reports are contemplated in the injunction track.

| October 16, 2015 | Fact discovery closes |
|---|---|
| October 23, 2015 | Expert depositions close;<br><br>Parties confer regarding Joint Pretrial Memorandum |
| October 23, 2015 | Parties file Joint Pretrial Memorandum per Local Rule 16.5(d) and Trial Briefs per Local Rule 16.5(f) |
| October 26, 2015 | Parties exchange lists of proposed trial exhibits and designations of deposition testimony to be offered in evidence at trial |
| October 28, 2015 | Parties file Motions *in limine* and exchange lists of counter-designations of deposition testimony and objections to deposition designations and proposed trial exhibits |
| November 3, 2015 | Parties file oppositions to Motions *in limine* |
| November ___, 2015 | Final Pretrial Conference |
| November 9-13, 2015 | Trial |

### 1.  Plaintiffs Proposed Limitations on Discovery (Plaintiffs' Expedited Permanent Injunction Schedule)

#### a.  Depositions

Plaintiffs propose that each side may take up to eight (8) depositions, plus two (2) depositions under Rule 30(b)(6) from each group of plaintiffs and defendants.  Expert depositions shall not count towards this limit.  Any expert may be deposed for one seven-hour day.

#### b.  Interrogatories

Plaintiffs propose that the Parties may serve up to ten (10) interrogatories in accordance with Federal Rule of Civil Procedure 33.

**B.**     **Plaintiffs' Proposed Damages Schedule**

| DATE | EVENT |
|---|---|
| *June 22, 2015* | *Complaint filed* |
| *July 21, 2015* | *Parties hold Rule 26(f) conference* |
| *July 24, 2015* | *Plaintiffs serve Initial Disclosures and produce* Purchasers' electronic transaction-level purchase and chargeback data showing purchases of Gleevec from January 1, 2014 to June 15, 2015.  Data will be provided for each plaintiff.<br>*Fact discovery opens* |
| *July 24, 2015* | *Parties submit Joint Rule 26(f) report* |
| *July 30, 2015* | *Court holds Rule 16 Conference* |
| December 4, 2015 | Parties certify production of documents substantially complete |
| December 11, 2015 | Deadline for joinder of additional parties and amendment of pleadings |
| May 31, 2016 | Fact discovery closes |
| June 30, 2016 | Parties exchange expert reports |
| July 15, 2016 | Plaintiffs file motion(s) for Class Certification |
| August 15, 2016 | Defendants file oppositions to motions for Class Certification |
| August 15, 2016 | Parties exchange rebuttal expert reports |
| September 15, 2016 | Plaintiffs file reply briefs to oppositions to motions for class certification |
| October 14, 2016 | Expert depositions close |
| December 5, 2016 | Parties file Motions for Summary Judgment[19] |
| January 16, 2017 | Parties file oppositions to Motions for Summary Judgment |
| January 27, 2017 | Parties file reply briefs to oppositions to Motions for Summary Judgment |

[19]    Plaintiffs propose that no motions for summary judgment may be filed before this date except by agreement of the parties or upon order of the Court for good cause shown.

| February 3, 2017 | Parties exchange lists of proposed trial exhibits and designations of deposition testimony to be offered in evidence at trial |
| February 15, 2017 | Parties meet and confer regarding proposed trial exhibits and designations of deposition testimony to be offered in evidence at trial |
| March 3, 2017 | Parties file Motions *in limine,* proposed jury instructions and proposed forms of verdict<br><br>Parties exchange lists of expected and potential witnesses and the substance of their testimony |
| March 10, 2017 | Parties file Joint Pretrial Memorandum per Local Rule 16.5 and oppositions to Motions *in limine* |
| March 15, 2017 | Parties provide to Court their final lists of proposed trial exhibits, and submit any disputes regarding designations of deposition testimony to be offered in evidence at trial |
| March 17, 2017 | Final Pretrial Conference |
| March 27, 2017 | Parties file trial briefs including requests for rulings and instructions per Local Rule 16.5(f) |
| April 3, 2017 | Trial begins |

### 1.    Plaintiffs' Proposed Limitations on Discovery (Plaintiffs' Proposed Damages Schedule)

#### a.    Depositions

Plaintiffs propose that each side may take up to twenty (20) depositions, plus three (3) depositions under Rule 30(b)(6) from each group of plaintiffs and defendants.  In addition, any proposed expert witness may be deposed for one seven-hour day.

#### b.    Interrogatories

Plaintiffs propose that the Parties may serve interrogatories in accordance with Federal Rule of Civil Procedure 33.

C.      **NPC's and NC's Proposed Case Management Schedule**

In recognition that at its heart, Plaintiffs' case seeks to invalidate the Polymorph

Patents, Defendants NPC and NC propose a schedule which takes into account the events

necessary to litigate a patent validity challenge consistent with both the patent-specific

provisions of Local Rule 16.6 and Appendix E Supplement and the case management

schedule entered in the Sun Litigation, which specifically addressed the patent issues

raised by Plaintiffs.[20]

| DATE OR INTERVAL | EVENT |
|---|---|
| July 29, 2015 | NPC's and NC's Motion to Dismiss filed. |
| August 20, 2015 | Plaintiffs' Opposition due.  (*NPC and NC propose an additional week for Plaintiffs to submit their opposition and request leave to file a reply brief.*) |
| August 27, 2015 | Defendants NPC's and NC's Reply due. |
| September 10, 2015 | Hearing on Motion to Dismiss |
| Following Decision on NPC and NC's Motion to Dismiss | Rule 16.1 Conference |
| 30 days following Rule 16.1 Conference | Plaintiffs provide patent invalidity contentions. |
| | Plaintiffs, NPC and NC to finalize terms of Protective Order and ESI Protocol. |
| 12 months following Rule 16.1 Conference | Fact Discovery of NPC and NC covering patent, antitrust and class certification issues to commence after Rule 16.1 Conference and be completed within 12 months following Rule 16.1 Conference.[21] |

---

[20]    Sun Litigation, Docket Item 19.

[21]    Notwithstanding Plaintiffs' proposed schedule, the parties have not stipulated, nor has the Court ordered, fact discovery to begin on July 24, 2015

| 6 months following Plaintiffs' patent invalidity contentions | Claim construction proceeding to commence after Rule 16.1 Conference and be completed within 6 months following Plaintiffs' patent invalidity contentions, including the following: |
|---|---|
| | Exchange of lists of proposed Claim Terms for Construction – Due 2 weeks after invalidity contentions are served; |
| | -Exchange of Preliminary Proposed Claim Constructions and Supporting Intrinsic and Extrinsic Evidence – Due 3 weeks after exchange of claim terms; |
| | -Identification of Rebuttal Intrinsic and Extrinsic Claim Construction Evidence – Due 2 weeks after exchange of preliminary constructions; |
| | -Completion of all discovery relating to claim construction, including depositions of any witnesses, other than experts, identified in the Joint Claim Construction Statement – To be completed 4 weeks after Identification of Rebuttal Intrinsic and Extrinsic Claim Construction Evidence; |
| | -Submission of opening Markman Briefs, including expert declarations – Due 2 weeks after completion of claim construction discovery; |
| | -Discovery of experts who submitted a declaration – to be completed 4 weeks after opening Markman Brief; *and* |
| | -Responsive Markman Briefs, including any rebuttal expert declarations - 4 weeks after completion of expert discovery. |
| | -Submission of Joint Claim Construction and Prehearing Statement – Due 2 weeks after filing of responsive Markman briefs[22]; |
| To be scheduled by the Court | Markman Hearing |
| 9 months following the Rule 16.1 Conference | Document discovery of Plaintiffs, NPC and NC completed. |
| 12 months following the Rule 16.1 Conference | All other fact discovery of Plaintiffs, NPC and NC (depositions, interrogatories) to be completed within 12 months following Rule 16.1 Conference. |
| To be completed 3 months after the completion of all fact discovery | Expert discovery of Plaintiffs, NPC and NC covering patent, antitrust and class certification issues (includes exchange of expert reports and rebuttal reports, and depositions of all of the Plaintiffs; NPC's and NC's expert |

---

[22]   Defendants' proposed schedule takes into account the Model Scheduling Order for Patent Cases set forth in Appendix E of the Local Rules, adding additional deadlines based on the schedule used in the Sun Litigation.

| | witnesses). |
|---|---|
| To be completed 2 months after the completion of expert discovery. | Briefing on class certification issues (includes all briefing in support of motion for class certification, opposition, replies). |
| To be scheduled following the Court's decision on class certification and to be completed within 2 months. | Briefing on summary judgment (includes all briefing in support of motions for summary judgment, opposition, reply). |

### 1.    Defendants NPC and NC's Proposed Limitations on Discovery

Defendants NPC and NC propose that the Parties abide by the Federal Rules of Civil Procedure and the Local Rules with respect to the number and manner of taking depositions in this case and the number of interrogatories which may be served.

## VI.    CONSENT TO TRIAL BY MAGISTRATE

Plaintiffs, NPC and NC do not consent to trial by magistrate.

## VII.    SETTLEMENT

Plaintiffs forwarded a settlement proposal to NPC and NC on July 13, 2015, in accordance with Local Rule 16.1(c).  Plaintiffs, NPC and NC have not discussed that proposal to date.  Plaintiffs believe, that to be meaningful, settlement discussions should be deferred until the Court has determined whether the case will proceed on an expedited basis toward a bench trial in 2015, or on the damages track as described above.  NPC and NC believe that, to be meaningful, settlement discussions should be deferred until after the Court rules on NPC's and NC's motions to dismiss.

## VIII.    CERTIFICATION BY COUNSEL
## CONCERNING CONFERRING WITH THE PARTIES

Counsel have conferred with the parties concerning litigation budget matters and alternative dispute resolution and will supply party certifications within 7 days.

Dated:  July 24, 2015

Respectfully submitted,


By: **/s/ Thomas M. Sobol**
Thomas M. Sobol (BBO# 471770)
Kristen A. Johnson (BBO# 667261)
Hannah Schwarzchild (*pro hac vice
forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO
LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com
hannahs@hbsslaw.com



John Radice (*pro hac vice forthcoming*)
RADICE LAW FIRM
34 Sunset Blvd.
Long Beach, NJ 08008
(646) 245-8502
jradice@radicelawfirm.com

*Attorneys for Plaintiffs, in Their Capacity as
Proposed Class Representatives, and the
Proposed Class*


Kenneth A. Wexler (*pro hac vice
forthcoming*)
Edward A. Wallace (*pro hac vice
forthcoming*)
Justin N. Boley (*pro hac vice forthcoming*)
WEXLER WALLACE
55 West Monroe St., Suite 3300
Chicago, IL 60603
(312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com

jnb@wexlerwallace.com

Jonathan D. Karmel (*pro hac vice
forthcoming*)
KARMEL LAW FIRM
221 N. LaSalle Street, Suite 1307
Chicago, IL 60601
T: (312) 641-2910
jon@karmellawfirm.com

*Attorneys for United Food and Commercial
Workers Unions and Employers Midwest
Health Benefits Fund and the Proposed Class*


J. Gerard Stranch, IV (*pro hac vice
forthcoming*)
Joe P. Leniski, Jr.  (*pro hac vice forthcoming*)
BRANSTETTER, STRANCH & JENNINGS
PLCC
227 Second Avenue North, Fourth Floor
Nashville, TN 37201-1631
(615) 254-8801
gerards@BSJFirm.com
joeyl@BSJFirm.com

*Attorneys for Laborers Trust Fund for
Northern California and the Proposed Class*

Novartis Pharmaceuticals Corporation
    and Novartis Corporation, Defendants


By: */s/ Saul P. Morgenstern*
     Saul P. Morgenstern (*pro hac vice*)
     saul.morgenstern@kayescholer.com
     David K. Barr (*pro hac vice*)
     david.barr@kayescholer.com
     Mark D. Godler (*pro hac vice*)
     mark.godler@kayescholer.com
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
212-836-8000
212-836-8689 (fax)


     Laura S. Shores (*pro hac vice*)
     laura.shores@kayescholer.com
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
202-682-3500
202-682-3580 (fax)


     William A. Zucker, BBO # 541240
     wzucker@mcarter.com
     Wyley Proctor, BBO # 666613
     wproctor@mccarter.com
MCCARTER & ENGLISH LLP
265 Franklin Street, Boston, MA 02110
617-449-6500
617-607-9200 (fax)