# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND EMPLOYERS MIDWEST HEALTH BENEFITS FUND and LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NOVARTIS PHARMACEUTICALS CORP., NOVARTIS AG, and NOVARTIS CORPORATION,<br><br>    Defendants. | Civil Action No.  1:15-cv-12732-ADB |

## MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS NOVARTIS PHARMACEUTICALS CORPORATION AND NOVARTIS CORPORATION IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Saul P. Morgenstern
saul.morgenstern@kayescholer.com
David K. Barr
david.barr@kayescholer.com
Mark D. Godler
mark.godler@kayescholer.com
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
212-836-8000
212-836-8689 (fax)

William A. Zucker, BBO # 541240
wzucker@mcarter.com
Wyley Proctor, BBO # 666613
wproctor@mccarter.com
MCCARTER & ENGLISH LLP
265 Franklin Street, Boston, MA 02110
617-449-6500
617-607-9200 (fax)

Laura S. Shores
laura.shores@kayescholer.com
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
202-682-3500
202-682-3580 (fax)

*Attorneys for Defendants Novartis Pharmaceuticals Corporation and Novartis Corporation*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ........................................................................ 4

    A.    The Patents Covering Gleevec[®] ............................................ 4

    B.    The Sun Litigation ................................................................ 6

    C.    Plaintiffs' Claims ................................................................. 7

ARGUMENT ............................................................................................ 8

I.    APPLICABLE LEGAL STANDARDS ........................................... 8

II.    PLAINTIFFS LACK STANDING TO CHALLENGE THE VALIDITY OF THE PATENTS ............................................................ 12

    A.    Purchasers Do Not Have Standing to Challenge a Presumptively Valid Patent in the First Instance ................................................ 12

    B.    Indirect Purchasers Do Not Have Standing to Challenge Patent Validity Even in the Context of a Walker Process Claim ............................ 13

III.    PLAINTIFFS FAIL TO STATE A SHAM LITIGATION CLAIM BECAUSE THERE HAS BEEN NO PRIOR RULING OF PATENT INVALIDITY ...................... 15

CONCLUSION ......................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001)
888 F. Supp. 2d 1336 (N.D. Ga. 2012) ...................................................................................5

*In re AndroGel Antitrust Litig. (No. II)*,
888 F. Supp. 2d 1336 (N.D. Ga. 2012) .................................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................3, 8, 15

*Braintree Labs., Inc. v. Schwarz Pharma, Inc.*,
568 F. Supp. 2d 487 (D. Del. 2008)......................................................................................15

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998)..............................................................................................10

*California Motor Transportation Co. v. Trucking Unlimited*,
404 U.S. 508 (1972).................................................................................................................9

*Cat Tech LLC v. TubeMaster, Inc.*,
528 F.3d 871 (Fed. Cir. 2008)...........................................................................................9, 11

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
261 F. Supp. 2d 188 (E.D.N.Y. 2003) ..................................................................................16

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
363 F. Supp. 2d 514 (E.D.N.Y. 2005) ..................................................................................14

*Dana Corp. v. American Axle & Manufacturing, Inc.*,
279 F.3d 1372 (Fed. Cir. 2002)...............................................................................................5

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)............................................................................................................9, 10

*F.T.C. v. Watson Pharm., Inc.*,
677 F.3d 1298 (11th Cir. 2012) ............................................................................................17

*FTC v. Actavis*,
133 S.Ct. 2223 (2013).................................................................................................... *passim*

*Gagliardi v. Sullivan*,
513 F.3d 301 (1st Cir. 2008) ...................................................................................................8

Page(s)

*Hewlett-Packard Co. v. Acceleron LLC*,
    587 F.3d 1358 (Fed. Cir. 2009)...............................................................................9

*Hubbard v. Beatty & Hyde, Inc.*,
    178 N.E.2d 485 (Mass. 1961) .................................................................................10

*iLOR, LLC v. Google, Inc.*,
    631 F.3d 1372 (Fed. Cir. 2011)...............................................................................15

*Inline Plastics Corp. v. EasyPak, LLC*,
    2014 WL 297224 (D. Mass. Jan. 24, 2014) .............................................................5

*In re K-Dur Antitrust Litig.*,
    2007 WL 5297755 (D.N.J. Mar. 1, 2007)..........................................................10, 14

*Kaiser Found. v. Abbott Labs.*,
    2009 WL 3877513 (C.D. Cal. 2009)........................................................................14

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011)...............................................................................................9

*Mine Workers v. Pennington*,
    381 U.S. 657 (1965)...................................................................................................9

*Nobelpharma AB v. Implant Innovations, Inc.*,
    141 F.3d 1059 (Fed. Cir. 1998)...............................................................................10

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993).........................................................................................9, 10, 15

*Stephenson Oil Co. v. Citgo Petroleum Corp.*,
    271 F.R.D. 323 (N.D. Okla. 2010)......................................................................8, 13

*Sun Pharma Global FZE v. Novartis Pharmaceuticals Corp.*,
    13-cv-3542 (D.N.J. 2013) ................................................................................ *passim*

*Therasense, Inc. v. Becton, Dickinson and Co.*,
    649 F.3d 1276 (Fed. Cir. 2011)..........................................................................10, 13

*Walker Process Equip. Inc. v. Food Mach. & Chem. Corp.*,
    382 U.S. 172 (1965)......................................................................................... *passim*

*Walters v. Edgar*,
    163 F.3d 430 (7th Cir. 1998) ....................................................................................8

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)..................................................................................................16

Page(s)

**Statutes**

21 U.S.C. § 355(b)(1)(G) ....................................................................................................10

21 U.S.C. § 355(j)(2)(A)(vii)(IV) ..........................................................................................6

35 U.S.C. § 271(e)(5) ............................................................................................................6

35 U.S.C. § 282 .....................................................................................................................2

35 U.S.C. § 303–307 ...........................................................................................................12

35 U.S.C. § 311 *et seq*. .......................................................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................1, 2, 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................. *passim*

**Other Authorities**

*Patent Information Submitted with the Filing of an NDA, Amendment or
    Supplement*, DEPARTMENT OF HEALTH AND HUMAN SERVICES FOOD AND
    DRUG ADMINISTRATION,
    http://www.fda.gov/downloads/AboutFDA/ReportsManualsForms/Forms/UC
    M048352.pdf ...................................................................................................................5

Defendants Novartis Pharmaceuticals Corporation ("NPC") and Novartis Corporation ("NC") respectfully submit this memorandum in support of their joint motion to dismiss the Complaint in this action under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiffs, purporting to represent a class of "all purchasers" of the leukemia drug Gleevec®, are two health plans that pay health care providers, such as pharmacies, for drugs prescribed by doctors for their plan beneficiaries. Plaintiffs allege that "Novartis"[2] violated the antitrust laws by asserting and enforcing invalid patents specifically, by listing the patents in an U.S. Food and Drug Administration ("FDA") publication (the "Orange Book") as covering an approved drug and engaging in "sham" litigation with generic drug companies. Plaintiffs' sham listing and litigation claims rest on the following predicate: that "Novartis's selection of a non-needle form of imatinib mesylate in the mid-1990s was not a patentable invention" – in other words, that the beta crystalline form of imatinib meslyate was not patentable and that, as a result, the two patents covering Gleevec® are invalid.[3]

---

[1]   A third defendant, Novartis AG, is a Swiss holding company that was recently served under the Hague Service Convention. Novartis AG's time to respond to the Complaint currently runs until August 12, 2015.

[2]   The Complaint does not specify which of the three named defendants allegedly did what; rather, it defines all three collectively as "Novartis" and alleges generally that "Novartis" (and/or "defendants") took the complained-of actions. Notwithstanding this improper form of pleading, which fails to state clearly which defendant committed which alleged wrongful acts, for purposes of this motion NPC and NC are constrained to address the Complaint as written where necessary, and therefore use the Complaint's language without prejudice to their right to dispute its generality.

[3]   Joint Statement Pursuant to July 16, 2015 Order (Dkt. #51) at 6. Plaintiffs frame this as an issue of "patentability," but they misperceive the patent law. Federal courts do not determine "patentability" in the first instance. That is an issue for the U.S. Patent Office, which has already considered it and issued a patent on the invention. By statute, that patent is entitled to a presumption of validity, and any parties with proper standing seeking to challenge it

This is an issue that has never been ruled upon by any court.  The Patent Office obviously disagreed and deemed the beta crystalline form of imatinib meslyate patentable, and it has never since made any determination that would cast doubt on its decision.  More importantly, the court in the allegedly "sham" litigation itself never made any finding that the patent is invalid; neither has a court in any other litigation.  Plaintiffs can point to nothing to overcome the presumption of validity that each claim of an issued patent independently enjoys under the Patent Statute, 35 U.S.C. § 282.

The absence of a prior finding of invalidity is fatal to Plaintiffs' claim, for two reasons.  First, it deprives them of standing; only actual or potential infringers have standing to contest the validity of an issued patent in court.  Second, it fatally undermines their sham claim; a determination that litigation was objectively baseless requires more than mere speculation of what would have happened in a prior case that never went forward.  The Complaint therefore must be dismissed for lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

The Complaint focuses almost entirely on the counterclaim for infringement of one patent asserted by NPC in response to a declaratory judgment action brought by Sun Pharma Global FZE ("Sun") that was settled prior to any substantive decision on the merits.  But the Complaint fails to allege anything in the record of that case that tarnishes either the patent's validity or enforceability.  Plaintiffs recognize that a finding of invalidity is essential to their antitrust claim – that is the reason for their unprecedented appeal to this Court to make such a finding before proceeding to the merits of their putative antitrust claim.  Tellingly, they acknowledge that the "core issue" of validity is one that still "needs to be decided," and propose

in federal court – which, as shown below, Plaintiffs are not – must overcome that presumption with clear and convincing evidence of invalidity.

that this Court resolve the issue by way of a prompt trial limited to this single question before entertaining their antitrust claim.

The law does not permit purchasers such as these to litigate the validity of patents in the very first instance. Only actual or potential infringers have standing to challenge a patent's validity or enforceability, and purchasers cannot acquire standing merely by couching a patent invalidity challenge as an antitrust claim. Giving purchasers standing to seek a declaration that a patent is invalid in the first instance by merely rebranding their case as an antitrust claim would expose every patent settlement to antitrust attack, thus rendering every patent settlement non-final. This would deprive the patent laws' limitation of standing to accused infringers of any meaning, and undermine the law and policy favoring settlement of disputes.

The absence of any prior finding of invalidity also requires dismissal under Rule 12(b)(6) for failure to state a claim. The Complaint fails to allege anything about the settlement with Sun – such as a so-called "large and unexplained" payment to the alleged infringer – that might otherwise call into question the legitimacy of NPC's litigation position. In short, there is nothing to support Plaintiffs' claim that the patent was invalid and the litigation a sham, aside from Plaintiffs' conclusory allegations. They seek to cure this deficiency by asking this Court to make such a finding, effectively admitting that their assertion that the patents are invalid is no more than speculation. Their claims therefore fail to satisfy the standard set forth in *Twombly*, and dismissal is warranted. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Purchasers cannot be allowed to challenge a settlement based solely on speculation that the litigated patent might be invalid. To do so would eliminate the well-established distinction between settlements providing for "reverse payments" from the patent

holder to the prospective generic, which the Supreme Court has held warrant antitrust scrutiny, and those providing only for generic entry before patent expiration, which the Court has held do not. It would mean that any patent settlement could be subject of antitrust scrutiny, and that the parties to the patent case had settled nothing. This is contrary to law and policy. Plaintiffs lack standing and fail to state a claim, and their Complaint accordingly should be dismissed under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

### A.     The Patents Covering Gleevec®

Gleevec® (imatinib mesylate) is a drug approved by the FDA for, among other things, the treatment of certain types of chronic myeloid leukemia ("CML") and acute lymphoblastic leukemia ("ALL"). The basic U.S. compound patent covering the active ingredient, imatinib, U.S. Patent No. 5,521,184 (the "'184 patent") issued on May 28, 1996, and expired on July 4, 2015. Plaintiffs' claims are directed to two unexpired patents covering particular crystalline ("polymorphic") forms[4] of the imatinib mesylate salt contained in Gleevec® – U.S. Patent No. 6,894,051 ("'051 patent"), issued on May 17, 2005, and U.S. Patent No. 7,544,799 ("'799 patent"), issued on June 9, 2009, which was reissued as RE43,932 ("RE932

---

[4]     As explained in an FDA Guidance, "polymorphs" are "[c]rystalline forms [that] have different arrangements and/or conformations of the molecules in their crystal lattice." As the FDA Guidance further explains, "[p]olymorphic forms of a drug substance can have different chemical and physical properties, including melting point, chemical reactivity, apparent solubility, dissolution rate, optical and mechanical properties, vapor pressure, and density. These properties can have a direct effect on the ability to process and/or manufacture the drug substance and the drug product, as well as on drug product stability, dissolution, and bioavailability. Thus, polymorphism can affect the quality, safety, and efficacy of the drug product." Guidance for Industry, ANDAs: Pharmaceutical Solid Polymorphism at 2 (U.S. Department of Health and Human Services, Food and Drug Administration, Center for Drug Evaluation and Research (CDER), July 2007.

patent") on January 15, 2013 (collectively, the "Polymorph Patents").[5]  As listed in the Orange Book, exclusivity under the '051 patent expires November 23, 2019, and exclusivity under the RE932 patent expires July 16, 2019.

The heart of Plaintiffs' allegations is that developing the claimed non-needle shaped polymorphic form of the imatinib mesylate active ingredient in Gleevec® was obvious, rendering the Polymorph Patents invalid.[6]  Indeed, Plaintiffs assert as a general matter that the development of different polymorphic forms of a compound is routine and should not be patentable.  Compl., at ¶¶ 33-43, 125-126.  Plaintiffs further allege that during prosecution of the Polymorph Patents, NPC attempted to conceal from (and only belatedly disclosed to) the Patent Office the fact that the mesylate salt of imatinib had been described in the prior art.  *Id*. at ¶¶ 243-249.

However, Plaintiffs contradict themselves.  First, they concede that "[p]olymorphism is important in the development of pharmaceutical ingredients," *id*. at ¶ 33; indeed, the FDA has issued a specific Guidance for Industry on polymorphism in active

---

[5]    The '051 patent issued with 18 claims and the RE932 patent has four claims.  Under 35 U.S.C. § 282, each claim is independently entitled to a statutory presumption of validity.  In addition, in determining validity, a court will be required to construe the terms of each of those claims, just as it would in determining infringement.  *See e.g., Dana Corp. v. American Axle & Manufacturing, Inc.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002) ("[A] court may not invalidate the claims of a patent without construing the disputed limitations of the claims and applying them to the allegedly invalidating acts….Otherwise, as in this case, the decision invalidating the patent becomes effectively unreviewable."); *Inline Plastics Corp. v. EasyPak, LLC*, 2014 WL 297224, at *2 (D. Mass. Jan. 24, 2014) ("Allowing EasyPak's invalidity claims to proceed at this time might result in the relitigation of those claims.  As the Federal Circuit has explained, '[a] claim must be construed before determining its validity just as it is first construed before deciding infringement.' Claims must be 'given the same meaning for purposes of both validity and infringement analysis.'").

[6]    While Plaintiffs assert that the Polymorph Patents are "invalid," it is hornbook patent law that validity is determined on a claim-by-claim basis.  *See e.g., Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Of course…infringement and validity analyses must be performed on a claim-by-claim basis.").

pharmaceutical ingredients.  *See supra,* footnote 4.  Moreover, there can be no denying that the U.S. Patent Office issues patents claiming polymorphic forms of pharmaceutical compounds and that the FDA lists patents claiming polymorphs in the Orange Book.[7]  Second, Plaintiffs also concede that (i) the Patent Office Board of Appeals determined that the Polymorph Patents claimed patentable subject matter even though the Board assumed the very fact that Plaintiffs assert was withheld – that the prior art described the mesylate salt of imatinib, *id.* at ¶¶ 233-238, and (ii) NPC submitted to the Patent Office the prior art references describing the existence of the mesylate salt of imatinib over a year before the Patent Office issued the first of the Polymorph Patents in May of 2005.  *Id.* at ¶¶ 243-249.

## B.     The Sun Litigation

Since the issuance of the Polymorph Patents, several generic manufacturers have filed Abbreviated New Drug Applications ("ANDAs") seeking FDA approval to market generic versions of Gleevec® before the expiration of the Polymorph Patents.  Sun Pharma filed the first ANDA, which certified under the Hatch-Waxman Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV Certification"), that in its opinion the '051 polymorph patent was invalid or would not be infringed.  Compl. at ¶ 222.  Sun did not challenge the validity of the '184 basic compound patent, and thus did not seek FDA approval until after the exclusivity based on the '184 patent expired, on July 5, 2015.  *Id.*  Sun subsequently notified Novartis that it had filed an ANDA with a Paragraph IV Certification.  *Id.* at ¶ 226.[8]

---

[7]     FDA Form 3542a, entitled "Patent Information Submitted With The Filing Of An NDA, Amendment, or Supplement," specifically provides for the listing in the Orange Book of patents claiming polymorphic forms of the active ingredient of drug products.  *See* http://www.fda.gov/downloads/AboutFDA/ReportsManualsForms/Forms/UCM048352.pdf.

[8]     The Complaint incorrectly alleges the dates of filing of Sun's ANDA and its notice letter to Novartis. Compl. at ¶ 226.  As set forth in the pleadings in the litigation between Sun and Novartis, Sun filed its ANDA with the FDA on June 16, 2006 (not in "late 2001") and

On June 7, 2013, Sun sued NPC, seeking a declaratory judgment that its planned generic imatinib product would not infringe the '051 patent and/or that the '051 patent was invalid.[9]  *Id*. at ¶ 272; *Sun Pharma Global FZE v. Novartis Pharmaceuticals Corp.*, 13-cv-3542 (D.N.J. 2013) (the "Sun Litigation").   NPC responded to Sun's lawsuit and counterclaimed, alleging infringement of the '051 patent and seeking a declaration that the patent was valid and enforceable.  *Id*. at ¶ 273.   On May 15, 2014, the parties settled and announced publicly that NPC had agreed to grant Sun a license to market its generic commencing on February 1, 2016, three years and ten months before the '051 patent will expire.  *Id*. at ¶ 276.[10]   The court accordingly dismissed the patent case, without ever calling into question the validity of the '051 patent.  *Id*. at ¶ 277.[11]

## C.   Plaintiffs' Claims

Plaintiffs brought this action on June 22, 2015, two weeks before the expiration of the '184 compound patent on July 4, 2015.   Plaintiffs allege that NPC and NC violated the

---

Sun's notice letter to Novartis was dated August 24, 2007 (not "January 15, 2002").  *See Sun Pharma Global FZE v. Novartis Pharmaceuticals Corp.*, 13-cv-3542, (Dkt. #1) at ¶¶ 35 and 40 (D.N.J. 2013); *id.*, (Dkt. #9) at ¶ 16.

[9]   Sun sought a declaratory judgment against NPC based on 35 U.S.C. § 271(e)(5), which authorizes a party that has filed an ANDA referencing a drug covered by a patent listed in the Orange Book to seek declaratory judgment that such patent is invalid or not infringed, if the holder of the patent has not brought an infringement suit within 45 days of receiving notice of the application.  *Sun Pharma Global FZE v. Novartis Pharmaceuticals Corp.*, 13-cv-3542, (Dkt. #1) at ¶ 11 (D.N.J. 2013).

[10]   The RE932 patent was not challenged in Sun's declaratory judgment complaint and was not part of the litigation.  The settlement, however, permits Sun to enter the market with its generic product three and a half years before pediatric exclusivity for the RE932 patent expires on July 16, 2019.

[11]   The Sun litigation did not result in any substantive record. The case settled months before the close of fact discovery and before any expert discovery had commenced.  *See Sun Pharma Global FZE v. Novartis Pharmaceuticals Corp.*, 13-cv-3542, (Dkt. #19) at 3 (D.N.J. 2013).

antitrust laws by listing an invalid and unenforceable patent in the Orange Book and engaging in baseless, sham litigation to enforce that patent against Sun.

Plaintiffs' claims rest entirely on the premise that the Polymorph Patents are invalid. The Complaint, however, fails to allege in any plausible way that they are. Rather, Plaintiffs frame the issue as a question: "Would a reasonable pharmaceutical company in Novartis's position realistically expect to win a patent infringement suit accusing Sun Pharmaceuticals of infringing the '051 patent for the mesylate salt and β-crystal form of imatinib?" *Id*. at ¶ 6. In their submission supporting an accelerated scheduling order, Plaintiffs describe the "core issue that needs to be decided" in the requested "injunctive phase" of the case as: "[w]as Novartis's selection of a non-needle form of imatinib mesylate in the mid-1990s a patentable invention?" Joint Statement Pursuant to July 16, 2015 Order (Dkt. #51) at 6. Plaintiffs seek a permanent injunction prohibiting "Novartis" from "enforcing any term of its settlement agreement with Sun that would prevent Sun from launching its generic Gleevec® product after expiration of the '184 (compound) patent." Compl. at ¶ 359.[12]

## ARGUMENT

## I.    APPLICABLE LEGAL STANDARDS

"Dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary

---

[12]   Plaintiffs also assert that certain prior art was intentionally withheld from, or only belatedly disclosed to, the Patent Office; that the application for the '051 patent contained intentionally misleading statements regarding the invention of the polymorphic form of imatinib mesylate, *id*. at ¶¶ 182, 183, 185, 187, 210, 224, and that but for "disingenuous" arguments before the patent examiner, neither the '051 patent nor the '799/RE932 patent, would have issued. *Id*. at ¶¶ 210, 254, 262. The Complaint, however, does not assert a claim of fraud on the Patent Office under *Walker Process Equip. Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965), nor do Plaintiffs cite any prior finding by any court or the Patent Office that would support such a claim. *See infra* at 12.

to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008). Facially implausible antitrust complaints must be dismissed under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Id.* at 555–56 (internal citations omitted). Moreover, in a purported class action, dismissal of the entire case is proper when the named plaintiffs lack standing. *See Stephenson Oil Co. v. Citgo Petroleum Corp.*, 271 F.R.D. 323, 344 (N.D. Okla. 2010) ("Where the only named plaintiff in a putative class action lacks standing from the outset of the case…the proper course is dismissal."); *Walters v. Edgar*, 163 F.3d 430, 437 (7th Cir. 1998) (same).

Only accused infringers or parties that have taken "significant, concrete steps to conduct infringing activity" giving rise to a "real" and "immediate" patent infringement dispute have standing to seek a declaratory judgment of the validity of a patent in court. *Cat Tech LLC v. TubeMaster, Inc.,* 528 F.3d 871, 880 (Fed. Cir. 2008); *see also Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009) ("declaratory judgment jurisdiction exists where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity...") (quotation omitted). A challenger to the validity of a patent must prove that the patent is invalid, as alleged in Plaintiffs' Complaint, by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2246 (2011).

The *Noerr-Pennington* doctrine confirms that individuals and entities that petition governmental bodies for official action enjoy Constitutional immunity from antitrust liability, even where the requested governmental action may have anticompetitive effects. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Mine*

*Workers v. Pennington*, 381 U.S. 657 (1965). *Noerr-Pennington* immunity extends to efforts to petition courts, including litigation. *California Motor Transportation Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). There are two relevant exceptions to this rule: litigation that is "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business of a competitor," *Noerr*, 365 U.S. at 144; and the "enforcement of a patent procured by fraud on the Patent Office." *Walker Process Equip. Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965).

        To make out a sham litigation claim, plaintiffs must plead and prove that the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993) ("*PRE*"). This "objective prong" incorporates "the notion of probable cause to institute legal proceedings," requiring the litigant to have "no more than a 'reasonable belief that there is a chance that a claim may be held valid upon adjudication.'"[13] *Id.* at 62-63 (*quoting Hubbard v. Beatty & Hyde, Inc.*, 178 N.E.2d 485 (Mass. 1961)). If a plaintiff succeeds in showing that litigation is objectively baseless, it must then show that the defendant's subjective motivation was "an attempt to interfere directly with the business relationships of a competitor." *PRE*, 508 U.S. at 50 (*quoting Noerr*, 365 U.S. at 144). Both the objective and subjective prongs of the sham exception must be proven by clear and convincing evidence. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1064 (Fed. Cir. 1998).

        While the Complaint does not assert a *Walker Process* claim, we include the *Walker Process* standard here, because it insinuates that NPC withheld (or only belatedly

---

[13]   Plaintiff's Orange Book listing claims will depend on an equivalent question of patent law – whether the patents covering Gleevec® could "reasonably be asserted" against an unauthorized manufacturer. 21 U.S.C. § 355(b)(1)(G).

disclosed) prior art that, if disclosed (or timely disclosed) to the Patent Office, would have prevented issuance of the Polymorph Patents. *Walker Process* requires an antitrust plaintiff to establish, by clear and convincing evidence, "(1) [a] false representation or deliberate omission of a fact material to patentability; (2) made with the intent to deceive the patent examiner; (3) on which the examiner justifiably relied in granting the patent; and (4) but for which misrepresentation or deliberate omission the patent would not have been granted."[14] *C.R. Bard, Inc. v. M3 Sys., Inc.,* 157 F.3d 1340, 1364 (Fed. Cir. 1998); *see also Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (plaintiff must show that the patent would not have issued "but for" the misconduct, and that the patentee acted with the specific intent to deceive the PTO).

Thus, to prevail on their sham litigation claim, Plaintiffs must plead and prove – at a minimum – that (i) the Polymorph Patents are invalid (something no court has yet determined), (ii) that no reasonable patent owner could realistically expect to prevail in enforcing them, and (iii) that NPC specifically had no expectation of prevailing in the Sun litigation, but defended itself and its patent in the litigation solely to use the litigation process as a means to delay or prevent Sun and other generics from entering the market. A *Walker Process* claim, if Plaintiffs were making one, would require the additional showing that material prior art was deliberately withheld from the patent examiner and that but for the fraud the patent would not have issued.

---

[14]   Though the Complaint makes no explicit mention of the applicable doctrine, all antitrust claims based on allegedly fraudulent conduct before the PTO fall under the rubric of *Walker Process. See In re K-Dur Antitrust Litig.*, 2007 WL 5297755, at *18 (D.N.J. Mar. 1, 2007) (recognizing that the prohibition on purchaser plaintiff standing applies to all "*Walker Process*-type allegations").

II.     **PLAINTIFFS LACK STANDING TO CHALLENGE**
        **THE VALIDITY OF THE PATENTS**

A.      **Purchasers Do Not Have Standing to Challenge**
        **a Presumptively Valid Patent in the First Instance**

Plaintiffs, as purchasers, do not have standing to challenge the validity of the patents in the first instance.  They ask this Court to permit them, as purchasers of a product, to challenge the manufacturer's patents on that product in the first instance in the hope of creating a plausible basis for an antitrust claim.  In effect, they ask this Court to entertain, and decide, a *de facto* action for a declaratory judgment of invalidity as a first step toward stating, and then attempting to prove, the elements of an antitrust claim based on sham litigation ("objective baselessness," "subjective baselessness," causation, and injury).  But the law of patent standing expressly precludes them from doing this – only potential infringers or parties having taken "significant, concrete steps to conduct infringing activity" have standing to challenge the validity of a patent in court.  *Cat Tech LLC*, 528 F.3d at 880.

There is one route by which parties lacking standing to challenge patents in federal court may contest the validity of an issued patent over the prior art, but Plaintiffs evidently chose not to pursue it.  In the America Invents Act, 35 U.S.C. § 311 *et seq*., Congress created the Inter Partes Review procedure, pursuant to which any person can challenge in the U.S. Patent Office patents they believe are invalid over the prior art, as Plaintiffs assert in their Complaint.[15]  This is the only route by which parties lacking standing to challenge an issued

---

[15]     Under the America Invents Act, Inter Partes Review became available as of September 16, 2012 and replaced a prior Patent Office procedure called Inter Partes Reexamination.  Another Patent Office Procedure, Ex Parte Reexamination was also available for Plaintiffs to challenge the validity of the Polymorph Patents over the prior art; this procedure remains in effect after the America Invents Act.  *See* 35 U.S.C. § 303–307.

patent in federal court may contest an issued patent in the first instance.  Had Congress wished to permit such parties to challenge patents in federal court, it could have done so; it did not.

Plaintiffs should not be permitted to stretch the antitrust laws to confer standing to challenge issued and outstanding patents in court in the first instance, on the basis of nothing other than unsupported allegations of invalidity.   Plaintiffs ask this Court to embark on a "detailed exploration of the patent's validity" as an essential predicate to a finding of objective and subjective baselessness, something antitrust courts have repeatedly declined to undertake. *FTC v. Actavis*, 133 S.Ct. 2223, 2226 (2013) (discussed *infra* at 16-17).  Indeed, our research has uncovered no federal antitrust decision in which a court held a trial on patent validity in the first instance to predict how a previously settled patent litigation would have ended, as the predicate step toward then evaluating claims of objective and subjective baselessness in service of an antitrust claim.  If Plaintiffs are permitted to stretch antitrust pleading to confer standing to litigate what they are expressly precluded from doing under the patent laws, NPC and Sun – and any other litigants who settle patent cases within the boundaries outlined in *Actavis* – will have settled nothing.

   **B.    Indirect Purchasers Do Not Have Standing to Challenge**
   **Patent Validity Even in the Context of a *Walker Process* Claim**

While Plaintiffs do not allege a *Walker Process* claim or even mention *Walker Process* in their Complaint, their lack of standing to bring the sham litigation claim is supported by cases applying the related (though distinct) *Walker Process* doctrine.  *Walker Process Equip. Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965).  In *Walker Process*, the Supreme Court held that the enforcement of a patent obtained by fraud on the Patent Office could subject the patent holder to antitrust liability, provided all the elements otherwise necessary to establish a Sherman Act monopolization charge are present.  To allege a *Walker Process* claim, the plaintiff

must plead and prove that the patent holder intentionally submitted false information to the Patent Office, or withheld relevant information from the Patent Office, and that but for the fraud the patent would not have issued. While Plaintiffs have not raised such a claim, the cases applying the doctrine are instructive, as they too require a predicate finding of invalidity before an antitrust claim may be asserted.[16]

Indirect purchasers like these[17] do not have standing based on *Walker Process* to challenge the validity of a patent that had not previously been found invalid or unenforceable. To the contrary, each court that has considered this question in the context of a *Walker Process* claim has dismissed claims raised by indirect purchasers, or raised serious questions about indirect purchaser standing. *See In re K-Dur Antitrust Litig.*, 2007 WL 5297755, at *18 (D.N.J. Mar. 1, 2007) (granting motion to dismiss *Walker Process* claims raised by indirect purchasers because "the boundaries of standing…based upon *Walker Process*-type allegations simply cannot be stretched" to indirect purchasers); *see also In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514 (E.D.N.Y. 2005) (granting motion to dismiss *Walker Process* claims raised by indirect purchasers on preemption grounds and expressing doubt that indirect purchasers could have standing).

---

[16] *Walker Process* also requires an additional showing of intentional fraud perpetrated on the Patent Office, which Plaintiffs do not allege. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (holding that in order for a patent to be unenforceable due to inequitable conduct, a court must find that the patent would not have issued "but for" the misconduct, and that the patentee acted with the specific intent to deceive the PTO).

[17] While they purport to represent a class of "all purchasers" of Gleevec®, a group that would include wholesalers, retailers, patients, and perhaps even governmental entities that buy or pay for drugs, Plaintiffs are indirect purchasers who buy Gleevec® indirectly from pharmacies. In a purported class action, dismissal of the entire case is proper when the named plaintiffs lack standing. *See Stephenson Oil Co. v. Citgo Petroleum Corp.*, 271 F.R.D. 323, 344 (N.D. Okla. 2010).

For reasons equally applicable here, the court in *K-Dur* explained that permitting indirect purchaser assaults on patent validity would "discourage settlement and inject a significant level of uncertainty into the process of adjudicating patent disputes, [so that] it would become exponentially more costly for all parties involved." *K-Dur*, 2007 WL 5297755, at *19. The same is true here: giving standing to indirect purchasers like Plaintiffs would effectively allow any consumer to attack the validity of any patent by filing an antitrust lawsuit, without even raising a *Walker Process* claim. Just as other parties have tried unsuccessfully to do in the *Walker Process* context, Plaintiffs' sham litigation claim seeks to expand the boundaries of antitrust standing by allowing a third-party, indirect purchaser to reopen a settled patent case and litigate patent validity in the first instance. Allowing such a claim would run contrary to these cases and the Supreme Court's decision in *Actavis*, which is discussed more fully below. Those cases likewise sought to "preserve[] the appropriate balance between antitrust and patent law." *Kaiser Found. v. Abbott Labs.*, 2009 WL 3877513, at *4 (C.D. Cal. 2009). Plaintiffs attempt to upset that balance by filing a voluminous complaint, full of sound and fury, but containing none of the essential elements that would justify reopening a settled patent case, the record of which contains no finding to support an invalidity challenge. Without some basis on which to question the legitimacy of the settlement itself, this Court should not permit Plaintiffs' proposed expansion of the law.

## III.   PLAINTIFFS FAIL TO STATE A SHAM LITIGATION CLAIM BECAUSE THERE HAS BEEN NO PRIOR RULING OF PATENT INVALIDITY

The Complaint should be dismissed for a second reason: the absence of any prior finding of invalidity makes Plaintiffs' sham litigation allegations implausible, requiring dismissal under *Twombly*, *supra* at 8. To invoke *Noerr-Pennington*'s "sham" exception for litigation, a party challenging immunity must plead and prove that the lawsuit was objectively baseless and

undertaken without any realistic hope of winning.  A lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *PRE*, 508 U.S. at 60. The defendant's subjective motivations for bringing the lawsuit come into play only after objective baselessness has been established.   "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.*

Objective baselessness is not to be addressed *ab initio*; it is answered by looking to the record in other proceedings involving that patent, usually on the record of the allegedly baseless litigation itself.  "'A finding of objective baselessness is to be determined by the record made in the infringement proceedings.'" *In re AndroGel Antitrust Litig. (No. II)*, 888 F. Supp. 2d 1336, 1344 (N.D. Ga. 2012) (*quoting iLOR, LLC v. Google, Inc.,* 631 F.3d 1372, 1380 (Fed. Cir. 2011)); *see also Braintree Labs., Inc. v. Schwarz Pharma, Inc.*, 568 F. Supp. 2d 487, 497 (D. Del. 2008) (counterclaim plaintiff failed to prove objective baselessness because "[t]he validity of the [patent at issue] has not been adjudicated by any court (or the USPTO on reexamination)").

Here, the record of the underlying patent case is of no help to the Plaintiffs.  They admit that there were no substantive findings of any kind related to the '051 patent in the Sun Litigation, let alone a ruling of invalidity.  Compl. at ¶ 254.  Plaintiffs are left with nothing but the wholly speculative claim that, but for the settlement, Sun would have succeeded in invalidating the patent.  An antitrust claim cannot be maintained based on such conjecture alone. The Complaint points to nothing in the record of the Sun Litigation to support an inference that "Novartis" was certain to lose – much less any facts showing that a reasonable patent holder would not have counterclaimed against Sun for infringement of the '051 patent after Sun sought

a declaration of non-infringement and/or invalidity.  Plaintiffs' Complaint thus alleges no basis to support a finding that the Sun Litigation was objectively baseless.

Plaintiffs cannot bring a plausible antitrust case that is dependent on the wholly speculative claim that, but for the settlement, Sun would have succeeded in invalidating the patent.  The court in *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188 (E.D.N.Y. 2003), rejected a similar theory in the context of a challenged settlement agreement, where plaintiffs had argued that but for the settlement, which was reached prior to a ruling on motions for summary judgment, a generic manufacturer would have prevailed in the patent litigation.  As here, the challenged settlement in *Ciprofloxacin* concerned a patent that had never been invalidated.  *Id.* at 199.  The court dismissed the plaintiffs' theory because "a legal theory dependent on predicting the outcome of a specific lawsuit is unduly speculative," *id.* at 200 (*citing Whitmore v. Arkansas,* 495 U.S. 149, 159–60 (1990)), and "without a showing of patent invalidity, all that the Complaints contain is conjecture."  *Id.* at 201 (granting in part defendants' motion to dismiss).

The reasoning in *Ciprofloxacin* is consistent with later antitrust decisions, in which courts decided in various ways to avoid litigating in an antitrust case either the validity of patents or the possible outcome of a prior patent litigation.  These efforts culminated in *Actavis*, which resolved a split among the circuit courts about the antitrust analysis to be applied to so-called "reverse payment" patent litigation settlements between branded and generic pharmaceutical companies.  *Actavis,* 133 S.Ct. at 2226, 2234-37.  Before *Actavis*, courts had struggled with whether they had to first determine how the underlying patent litigation would have been decided had it not been settled in order to assess whether the settlement was procompetitive, because it allowed entry before patent expiration, or anticompetitive, because

17

entry would be later than it would have been had the generic firm prevailed, either because it succeeded in invalidating the patent or because the patent owner could not prove infringement. *See, e.g.*, *F.T.C. v. Watson Pharm., Inc.*, 677 F.3d 1298, 1312 (11th Cir. 2012) (rejecting the FTC's proposed "retrospective predict-the-likely-outcome-that-never-came approach") *rev'd and remanded sub nom., Actavis*, 133 S. Ct. at 2236 (rejecting the Eleventh Circuit's application of the scope of the patent test, but recognizing the importance of "avoid[ing] the need to litigate the patent's validity").

The Court in *Actavis* acknowledged the logical concern expressed by lower courts "that antitrust scrutiny of a reverse payment agreement would require the parties to litigate the validity of the patent in order to demonstrate what would have happened to competition in the absence of the settlement." *Actavis,* 133 S. Ct. at 2234. And it noted the lower court's observation that "[a]ny such litigation will prove time consuming, complex, and expensive." *Id*. To address this problem, the Court fashioned a shortcut for assessing validity, holding that a "large, unexplained reverse payment can provide a workable surrogate for a patent's weakness, all without forcing a court to conduct a detailed exploration of the patent's validity." *Id*. at 2226. To allay fears that such a rule, in the peculiar Hatch-Waxman framework, would deter settlements, the Court pointed out that parties "may settle in other ways, for example by allowing the generic manufacturer to enter the patentee's market before the patent expires without the patentee's paying the challenger to stay out prior to that point." *Id*. at 2237.

Plaintiffs concede that there is no prior finding of invalidity. Admitting that this "core issue" has yet to be decided by any court, they ask *this* Court to make such a determination in the first instance, requiring just the type of "time consuming, complex, and expensive" litigation of a patent case within an antitrust case that the Court's ruling in *Actavis* was designed

to prevent, so that they may proceed with their antitrust case.  The law does not permit them to do this; absent some *prior* finding impugning the patent's validity or allegations that the settlement provides for a "large, unjustified reverse payment."  Because Plaintiffs do not allege either they cannot state a plausible antitrust claim.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request this Court dismiss Plaintiffs' Complaint.

Dated:   July 29, 2015

Respectfully Submitted,

Novartis Pharmaceuticals Corporation
and Novartis Corporation, Defendants

By:  /s/ Saul P. Morgenstern
    Saul P. Morgenstern
    saul.morgenstern@kayescholer.com
    David K. Barr
    david.barr@kayescholer.com
    Mark D. Godler
    mark.godler@kayescholer.com
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
212-836-8000
212-836-8689 (fax)

Laura Shores
laura.shores@kayescholer.com
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
202-682-3500
202-682-3580 (fax)

William A. Zucker, BBO # 541240
wzucker@mccarter.com
Wyley Proctor, BBO # 666613
wproctor@mccarter.com
MCCARTER & ENGLISH LLP
265 Franklin Street, Boston, MA 02110
617-449-6500
617-607-9200 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I, Saul P. Morgenstern, hereby certify that on this 29th day of July, 2015, the within document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

<u>*/s/ Saul P. Morgenstern*</u>

Saul P. Morgenstern