UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND EMPLOYERS MIDWEST HEALTH BENEFITS FUND and LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, on behalf of themselves and others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>NOVARTIS PHARMACEUTICALS CORP., NOVARTIS AG, and NOVARTIS CORPORATION,<br><br>                    Defendants. | Civil Action No.  1:15-cv-12732-ADB |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTIONS TO DISMISS THE COMPLAINT**

Saul P. Morgenstern
saul.morgenstern@kayescholer.com
David K. Barr
david.barr@kayescholer.com
Mark D. Godler
mark.godler@kayescholer.com
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
212-836-8000
212-836-8689 (fax)

William A. Zucker, BBO # 541240
wzucker@mcarter.com
Wyley Proctor, BBO # 666613
wproctor@mccarter.com
MCCARTER & ENGLISH LLP
265 Franklin Street, Boston, MA 02110
617-449-6500
617-607-9200 (fax)

Laura S. Shores
laura.shores@kayescholer.com
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
202-682-3500
202-682-3580 (fax)

*Attorneys for Defendants Novartis Pharmaceuticals Corporation and Novartis Corporation*

*Additional Counsel on Next Page*

| | |
|---|---|
| Grant J. Esposito | William A. Zucker, BBO # 541240 |
| gesposito@mofo.com | wzucker@mcarter.com |
| Jessica Kaufman | Wyley Proctor, BBO # 666613 |
| jkaufman@mofo.com | wproctor@mccarter.com |
| MORRISON & FOERSTER LLP | MCCARTER & ENGLISH LLP |
| 250 West 55th Street | 265 Franklin Street, Boston, MA 02110 |
| New York, New York 10019 | 617-449-6500 |
| 212-468-8000 | 617-607-9200 (fax) |
| 212-468-7900 (fax) | |

*Attorneys for Defendant Novartis AG*

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    PLAINTIFFS' LACK OF STANDING TO LITIGATE PATENT VALIDITY IN THE FIRST INSTANCE IS FATAL TO THEIR SHAM LITIGATION CLAIM ............. 2

II.   THE COMPLAINT FAILS TO ALLEGE NON-CONCLUSORY FACTS SUPPORTING A SHAM LITIGATION CLAIM ............................................................. 6

III.  PLAINTIFFS' "POLICY" ARGUMENT IS INCONSISTENT WITH *ACTAVIS* ............. 9

CONCLUSION ............................................................................................................................. 10


# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 8

*Cat Tech LLC v. TubeMaster, Inc.*,
  528 F.3d 871 (Fed. Cir. 2008) ............................................................................................. 5

*FTC v. Actavis*,
  133 S.Ct. 2223 (2013) ........................................................................................................ 10

*Hewlett-Packard Co. v. Acceleron LLC*,
  587 F.3d 1358 (Fed. Cir. 2009) ........................................................................................... 5

*In re Cardizem CD Antitrust Litig.*,
  105 F.Supp.2d 618 (E.D. Mich. 2000) ), *aff'd*, 332 F.3d 896 (6th Cir. 2003) ..................... 5

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
  261 F.Supp.2d 188 (E.D.N.Y. 2003) ................................................................................... 7

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
  363 F.Supp.2d 514 (E.D.N.Y. 2005) ................................................................................... 4

*In re Effexor Antitrust Litig.*,
  2014 WL 4988410 (D.N.J. Oct. 6, 2014) ............................................................................ 5

*In re K-Dur Antitrust Litig.*,
  2007 WL 5297755 (D.N.J. 2007) ........................................................................................ 6

*In re Loestrin 24 FE Antitrust Litig.*,
  45 F.Supp.3d 180 (D.R.I. 2014) ...................................................................................... 5, 6

*In re Neurontin Antitrust Litig.*,
  2009 WL 2751029 (D.N.J. 2009) ........................................................................................ 5

*In re Nexium (Esomeprazole) Antitrust Litig.*,
  968 F.Supp.2d 367 (D. Mass. 2013) .................................................................................... 5

*In re Relafen Antitrust Litig.*,
  346 F.Supp.2d 349 (D. Mass. 2004) .................................................................................... 5

*In re Wellbutrin SR Litig.*,
    2006 WL 616292 (E.D. Pa. 2006) .................................................................................. 5

*King Drug Co. of Florence, Inc. v. SmithKline Beecham Corp.* ("*Lamictal*"),
    791 F.3d 338 (3d Cir. 2015 ...................................................................................... 5, 6

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011) ................................................................................................. 4

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
    508 U.S. 49 (1993) ........................................................................................... 3, 4, 8, 9

*Radiancy, Inc. v. Viatek Consumer Products Grp., Inc.*,
    2014 WL 4772340 (S.D.N.Y. Mar. 28, 2014), *as amended* (Apr. 1, 2014) .............. 8, 9

*Rochester Drug Co-op., Inc. v. Braintree Laboratories*,
    712 F.Supp.2d 308 (D. Del. 2010) ............................................................................... 5

*SmithKline Beecham v. Apotex*,
    383 F.Supp.2d 686 (E.D. 2004) ................................................................................... 5

*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*,
    312 F.3d 90 (2d Cir. 1990) ....................................................................................... 8, 9

*Warner-Lambert Co. v. Purepac Pharm. Co.*,
    2000 WL 34213890 (D.N.J. 2000) ............................................................................... 5

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ...................................................................................... 3

**Statutes**

21 U.S.C. § 355(b)(1)(G) ....................................................................................................... 3

Pub. L. No. 108-173, 117 Stat. 2066 ..................................................................................... 8

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1

Defendants Novartis Pharmaceuticals Corporation ("NPC"), Novartis Corporation ("NC"), and Novartis AG[1] respectfully submit this Reply in Support of Defendants' Motion to Dismiss the Complaint under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs' Opposition to Novartis's Motions to Dismiss (Dkt. # 68) ("Opp.") confirms that an essential predicate to their putative antitrust claim – clearly absent here – is that Novartis' U.S. Patent No. 6,894,051 (the "'051 patent") is invalid. Absent such a finding, they cannot establish objective, let alone subjective, baselessness, the elements of their antitrust claim. Yet, they fail to allege anything in the record of any prior proceeding that supports this essential requirement, because it does not exist; the '051 Patent has never been invalidated, or even tarnished, in any prior proceeding. Plaintiffs ask *this* Court to supply this key missing ingredient, but even they concede that they lack standing to litigate the validity of a patent in the first instance. Plaintiffs attempt to sidestep this obstacle, arguing the uncontroverted proposition that purchasers generally have standing to bring claims based on sham patent litigation. Their argument misses the point. Because Plaintiffs lack standing to litigate the validity of the '051 patent in the first instance, and that is what they have sought to do here from day one, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1).

Nor do Plaintiffs offer sufficient facts – as opposed to conclusions – to support a plausible claim of objective and subjective baselessness. Indeed, their few non-conclusory factual allegations actually contradict such a claim. For example, if, as Plaintiffs allege, the '051 patent is so flawed that victory was assured in the patent lawsuit filed by Sun Pharma Global

---

[1] As noted in our Memorandum in Support of Motion to Dismiss (Dkt. #54) ("Mem."), the Complaint inappropriately refers to Defendants collectively as "Novartis." We use the Complaint's language without prejudice to each Defendant's right to dispute its generality.

FZE ("Sun") (the "Sun Litigation"), then it makes no sense that Sun agreed to settle the litigation. Indeed, as Plaintiffs point out, nearly half of the patent challenges brought by generic drug companies are unsuccessful, a fact that provides both a reasonable basis for a patent owner's decision to defend a challenge like Sun's and a rational explanation for Sun's decision to settle. Plaintiffs have thus alleged no factual basis for a plausible sham litigation claim, mandating dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6).

The Court should not permit Plaintiffs to challenge the '051 patent simply based on their argument that the settlement prevented a ruling on the patent's validity. Allowing an indirect purchaser to launch an antitrust suit based on the conclusory allegation that the patent holder engaged in a "scheme" to avoid patent invalidation merely by settling an infringement case would put every settlement in jeopardy. Because settlement necessarily ends litigation, any settlement could be cast as an unlawful "scheme" to avoid adjudication of a case on the merits and easily reopened as an antitrust claim, leaving little benefit to settling patent cases: a patent holder would be forced to litigate the very issues it thought it had settled. This is contrary to the strong public policy favoring settlement. No court has entertained such a sweeping expansion of the antitrust laws, and this Court should decline Plaintiffs' invitation to do so.

## ARGUMENT

### I. PLAINTIFFS' LACK OF STANDING TO LITIGATE PATENT VALIDITY IN THE FIRST INSTANCE IS FATAL TO THEIR SHAM LITIGATION CLAIM

Plaintiffs have now confirmed that they are not invoking the *Walker Process* exception to *Noerr-Pennington*, and that the Complaint purports to state a claim based solely on the sham litigation exception. Opp. at 11. The sham exception requires a plaintiff to plead and prove that (1) the infringement suit was objectively baseless at the time the lawsuit was filed, and, if so, (2) the suit was motivated by an attempt to use the litigation process to interfere with

the business of a competitor. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61 (1993) ("*PRE*"). Only when a challenged litigation is proven to be objectively meritless – so that no reasonable litigant could have expected to win – may a court examine the litigant's subjective motivation. *See id.* at 62.[2]

Plaintiffs therefore must establish that there was no objectively reasonable basis to enforce the '051 patent in the Sun Litigation, and that the sole purpose of the litigation was to delay generic competition. As their Opposition explains, Plaintiffs' entire theory of objective baselessness rests on the allegation that the patent is "obvious over prior art and thus lacked the element of novelty essential to any patent's *validity*." Opp. at 13 (emphasis added). Their theory of improper intent is the same: "Novartis's prosecution of its counterclaims for infringement of a patent it *knew to be invalid and unenforceable* constituted sham litigation that was conducted for the illegal purpose of keeping Sun's generic version of Gleevec and other generic versions of Gleevec from competing with brand Gleevec." Compl. at ¶ 309 (emphasis added); *see also id.* at ¶ 275. Plaintiffs' sham claim is thus irrefutably predicated on a finding of invalidity.[3]

Plaintiffs' prior statements in this litigation are all consistent with the logical premise that this Court cannot determine whether a reasonable pharmaceutical manufacturer would have expected its patent to be held valid without addressing whether the patent is *in fact*

---

[2] Plaintiffs incorrectly assert that "[o]nce an antitrust plaintiff *alleges* that the antitrust defendant's underlying lawsuit was objectively baseless, a court must consider subjective baselessness." Opp. at 14 (emphasis added). The law requires Plaintiffs to "disprove the challenged lawsuit's *legal* viability" before the court will entertain evidence of the litigant's subjective motivations for bringing it. *PRE,* 508 U.S. at 61 (emphasis in original); *see also White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) ("[P]roof of a lawsuit's objective baselessness is the 'threshold prerequisite': a court *may not even consider* the defendant's allegedly illegal objective unless it first determines that his lawsuit was objectively baseless." (emphasis added)).

[3] Plaintiffs' claim alleging improper listing of the '051 patent in the Orange Book is similarly predicated on a finding of invalidity. *See* Opp. at 5. Plaintiffs' Orange Book claim depends on an equivalent legal question – whether the patents covering Gleevec® could "reasonably be asserted" against an unauthorized manufacturer. 21 U.S.C. § 355(b)(1)(G).

valid.  For example, Plaintiffs stated in the parties' joint submission in advance of the July 30, 2015 scheduling conference that their "sham claim rests on allegations of invalidity," and reiterated their position that the Sun Litigation was objectively baseless because "no reasonable pharmaceutical manufacturer would – after discovery and expert testimony – realistically expect the court to hold that Novartis's patents were valid…."  Joint Statement of Plaintiffs and Defendants Novartis Pharmaceuticals Corporation and Novartis Corporation Pursuant to July 16, 2015 Order (Dkt. #51) at 4 & n.4.  Indeed, they initially moved for "an expedited permanent injunction track" devoted to "one core issue" – whether the invention at issue was patentable.  *Id*. at 5-6.  Finally, at the July 30, 2015 conference, Plaintiffs agreed that to establish that Novartis' counterclaim was objectively baseless "we'd have to prove that once all the facts about this patent came out, it were [*sic*] more likely than that the patent would have been found to have been held invalid."  Transcript of Sched. Conference (Dkt. #66) at p. 11, lines 20-23.[4]

    Conceding that they lack standing to seek invalidation of the patent (Opp. at 9), Plaintiffs *now* insist – contrary to all of their previous statements – that they "do not seek to litigate the patent in the first instance," and that "there are no circumstances in which purchasers' antitrust claims could result in the invalidation of the patent."  Opp. at 12.  But as their previous

---

[4] Plaintiffs misstated the standards of proof required to show both objective baselessness and patent invalidity at the hearing and in their Opposition.  *See* Opp. at 6.  A determination of objective baselessness requires a finding that any reasonable patent owner would have known that the case had no chance of succeeding, not that it was "more likely" to fail.  *See PRE*, 508 U.S. at 62-63 ("Probable cause to institute civil proceedings requires no more than a reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication." (citation omitted)). A challenge to the validity of a patent must be proved by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2246 (2011); *see also In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F.Supp.2d 514, 531 (E.D.N.Y. 2005) (declining to conduct "an after-the-fact inquiry into the validity of the underlying patent"); *id.* at 541 (observing that if a rule were fashioned giving non-infringing consumers standing to challenge patent validity, "the consumers would have to show by clear and convincing evidence – as accused infringers must – that the subject patent was invalid.").

4

statements and logic make clear, their antitrust claim requires a finding that the '051 patent is invalid, which Plaintiffs are asking this Court to supply in the first instance. Plaintiffs' support for this unprecedented request is a footnote full of citations in support of general antitrust principles that (a) have no bearing on the issue before the Court, and (b) obscure a critical deficiency in Plaintiffs' argument.

Plaintiffs' assertion that antitrust law governs antitrust standing, and that it permits purchasers to raise claims of sham litigation (Opp. at 1), is an unsuccessful attempt to bypass controlling law regarding standing to challenge patent validity. Plaintiffs do not deny that only accused infringers have standing under the patent laws to challenge the validity of a patent in court. *See, e.g., Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008); *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009). The law does not permit an indirect purchaser, who is not subject to suit for infringement, to challenge the validity of an untarnished, presumptively valid patent simply by styling its claim as an antitrust claim. Plaintiffs have cited no case to the contrary,[5] and no case in which indirect purchasers like

---

[5] The cases cited in footnote 36 of the Opposition are inapposite. In *Effexor*, the court in the underlying patent case made a ruling in the *Markman* hearing that plaintiffs alleged would have caused the patent holder to conclude "that loss of the litigation was right around the corner." *In re Effexor Antitrust Litig.*, 2014 WL 4988410, at *10 (D.N.J. 2014). In *Braintree* ("*Miralax*"), the patent holder had abandoned its claim of validity and voluntarily dismissed the underlying infringement case when discovery from the named inventor established that the patent was invalid. *See Rochester Drug Co-op., Inc. v. Braintree Laboratories*, 712 F.Supp.2d 308, 314 (D. Del. 2010). Validity was not at issue in *Neurontin, Wellbutrin SR, Relafin*, or *Cardizem CD*. *See In re Neurontin Antitrust Litig.*, 2009 WL 2751029 (D.N.J. 2009); *In re Wellbutrin SR Litig.*, 2006 WL 616292 (E.D. Pa. 2006); *In re Relafen Antitrust Litig.*, 346 F.Supp.2d 349 (D. Mass. 2004); *In re Cardizem CD Antitrust Litig.*, 105 F.Supp.2d 618 (E.D. Mich. 2000), *aff'd*, 332 F.3d 896 (6th Cir. 2003). In *SmithKline Beecham v. Apotex*, 383 F.Supp.2d 686 (E.D. 2004), and *Warner-Lambert Co. v. Purepac Pharm. Co.*, 2000 WL 34213890 (D.N.J. 2000), the parties asserting sham claims were the accused infringers in the patent litigation itself. *Nexium, Loestrin*, and *Lamictal* all involved alleged reverse payment settlements – a theory not advanced by Plaintiffs here. *See In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F.Supp.2d 367 (D. Mass. 2013); *In re Loestrin 24 FE Antitrust Litig.*, 45

5

themselves have been allowed to file a lawsuit for the express purpose of contesting the validity of an untarnished patent in support of an antitrust claim. Plaintiffs seek a radical expansion of standing that no court has endorsed.

Plaintiffs also do not contest the fact that procedures exist by which they could challenge the validity of a patent in the Patent Office. *See* Mem. at 12 & n.15. They chose not to pursue this route. Instead, Plaintiffs ask this Court – describing it as the "core issue" to be decided – to determine in the first instance whether the Patent Office erred when it determined that Novartis' invention was patentable. As indirect purchasers of the patented product, Plaintiffs do not have standing to make such a request.[6]

## II. THE COMPLAINT FAILS TO ALLEGE NON-CONCLUSORY FACTS SUPPORTING A SHAM LITIGATION CLAIM

The Complaint fails to state facts that would, if proven, support a finding that any reasonable patent holder would have known that the '051 patent would be found invalid in the Sun Litigation – an essential element of Plaintiffs' sham claim. Plaintiffs admit that the court in the Sun Litigation made no finding of invalidity, and they fail to cite anything from the record in that or any other case confirming that the '051 patent was certain to be invalidated, let alone that

---

F.Supp.3d 180 (D.R.I. 2014), *King Drug Co. of Florence, Inc. v. SmithKline Beecham Corp.* ("*Lamictal*"), 791 F.3d 338 (3d Cir. 2015). The remaining cases cited in footnote 36 of the Opposition do not involve sham claims or patent validity at all.

[6] Despite having disavowed any intent to raise a claim under *Walker Process*, Plaintiffs cite a number of *Walker Process* cases for the proposition that a plaintiff has standing under the antitrust laws to seek a remedy for anticompetitive conduct involving a patent. Opp. at 9-10. However, as explained in our moving memorandum, Plaintiffs do not have standing to do this either. Mem. at 14. Indirect purchasers do not have standing under *Walker Process* to challenge the validity of an issued patent that has never been found invalid or unenforceable, for the same reasons that foreclose their sham litigation claim. Giving indirect purchasers standing under *Walker Process* to attack the validity of untarnished patents would, as one court explained, "discourage settlement and inject a significant level of uncertainty into the process of adjudicating patent disputes, [so that] it would be come exponentially more costly for all parties involved." *In re K-Dur Antitrust Litig.*, 2007 WL 5297755, at *18 (D.N.J. 2007).

6

any patent owner would have known that it would be. The absence of such allegations, essential to a finding of objective baselessness, is fatal to their sham claim.[7]

As shown above, Plaintiffs' allegations seek to address the validity of the '051 patent in this action in the first instance, and are thus insufficient as a matter of law to support a claim that Novartis' counterclaim in the Sun Litigation was a sham. *See In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F.Supp.2d 188, 201 (E.D.N.Y. 2003) (granting in part defendants' motion to dismiss because "without a showing of patent invalidity, all that the complaints contain is conjecture…."). And Plaintiffs offer no *factual* basis beyond their own attack on the patent itself from which one could conclude that any reasonable patent holder would be certain that it was fruitless to defend and counterclaim in the Sun Litigation.[8] Instead, Plaintiffs resort to conclusory allegations that "Novartis knew that the ['051 patent and later follow-on patents]… had no realistic likelihood of ever being able to stand up in court as valid patents," and that "the infringement counterclaim against Sun was a sham undertaken in order to create leverage for a secret settlement…." Opp. at 13-14.[9]

---

[7] Plaintiffs incorrectly claim that Defendants do not contest the sufficiency of the Complaint's allegations of objective and subjective baselessness. *See* Opp. at 15. Defendants challenged the sufficiency of Plaintiffs' sham claim on the grounds that Plaintiffs fail to cite to anything in the record of the underlying Sun Litigation and that the Complaint fails to allege *facts* – rather than conclusions – showing that a reasonable patent holder in Novartis' position would not have defended its patent when Sun sued. *See* Mem. at 15-17.

[8] Plaintiffs' position is likewise nonsensical. If the invalidity of '051 patent was so clear that any reasonable pharmaceutical company would not have expected it to survive litigation, there would have been no reason for Sun to settle and abandon its patent challenge. Plaintiffs' unsupported assertion that the '051 patent would have been found invalid after discovery and expert testimony hardly addresses this fact; if the claimed crystalline form of imatinib mesylate salt was as clearly unpatentable over published prior art as Plaintiffs assert, it is hard to see what discovery would be needed to prove it.

[9] The settlement was not secret; the agreement and Sun's pre-patent expiration entry date were announced publicly on May 15, 2014. That other terms are non-public is customary and insignificant. Neither party would want other competitors to know the terms of their agreement. Moreover, the agreement document was submitted for review to the Federal Trade

7

But these naked declarations about Novartis' view of its case are not facts, and, as Plaintiffs correctly note, *only* "non-conclusory factual allegations" must be accepted as true. Opp. at 6 & n.30. Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("courts are not bound to accept as true a legal conclusion couched as a factual allegation" (quotation omitted)). Plaintiffs' conclusions are no substitute for factual allegations supporting claims of objective and subjective baselessness. To survive a motion to dismiss, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…." *Twombly*, 550 U.S. at 555. The Complaint does not pass this test.

Moreover, Plaintiffs' own allegations, taken as true, are to the contrary. As Plaintiffs point out, generic companies prevail (by invalidating the patent or establishing non-infringement) in 50% of fully litigated cases, meaning that innovator companies prevail in the remaining 50%. *See* Opp. at 2 & n.7. Such odds certainly would reinforce an objective patent owner's reasonable belief that there was a chance of success in defending the Sun Litigation. *See Radiancy, Inc. v. Viatek Consumer Products Grp., Inc.*, 2014 WL 4772340, at *15 (S.D.N.Y. Mar. 28, 2014), *as amended* (Apr. 1, 2014) ("a reasonable belief that there is a chance that a claim may be held valid upon adjudication, defeats the objective component necessary to find that a plaintiff has engaged in sham [patent] litigation" (quotation omitted)).[10] Moreover, the

---

Commission and Department of Justice within ten days of execution as required by the Medicare Modernization Act. Pub. L. No. 108-173, 117 Stat. 2066.

[10] Plaintiffs erroneously rely on *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90 (2d Cir. 1990), for the proposition that "even a winning lawsuit" does not foreclose a finding that it was a sham. First, this proposition directly contradicts *PRE*, which holds that a "winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." 508 U.S. at 60 n.5. Second, *T.F.T.F. Capital Corp.* involved a default judgment, not a

Complaint alleges that the '051 patent was issued only after a robust vetting by the Examiner and the Patent Office Board of Appeals.[11] These allegations belie Plaintiffs' conclusory and unsupported claims that a reasonable patent holder would "know" that the '051 patent was invalid and that it had no realistic chance of succeeding in the litigation; to the contrary, they provide support for "a reasonable belief that there is a chance" that it would prevail. *Id.*

### III.   PLAINTIFFS' "POLICY" ARGUMENT IS INCONSISTENT WITH *ACTAVIS*

The fatal flaw in Plaintiffs' case is further exposed by their argument that they should be permitted to sue notwithstanding the absence of a prior finding tarnishing the validity of the patent, on the ground that the lack of such a ruling is attributable to Novartis' conscious "scheme" to avoid one by settling. Opp. at 1-2. All settlements reflect a compromise that avoids the risk of continued litigation in favor of the certainty of an agreed outcome. By Plaintiffs' logic, any patent litigation settlement could later be cast as a monopolistic "scheme" to avoid an adverse resolution. Every patent settlement would be vulnerable to treble damages actions; any consumer claiming to have been overcharged for a patented product would have to do no more than wait for a patent case to settle and file an antitrust case accusing the patent holder of engaging in a "scheme" to avoid an adverse ruling by settling. Such a framework would subject patent holders to a proliferation of burdensome and vexatious patent suits, deter innovation, and seriously undermine the strong public policy in favor of settlement.

---

decision on the merits. As the court there explained, while it may technically be a "winning lawsuit," a default judgment does not *ipso facto* establish the "objective reasonableness of the litigation." *T.F.T.F. Capital Corp.,* 312 F.3d at 94.

[11] Plaintiffs assert that Novartis knew that the mesylate salt form of imatinib had been publicly disclosed (Opp. at 4-5); yet, the Complaint concedes that the Board of Appeals assumed this for purposes of its decision and determined that the '051 patent claimed patentable subject matter anyway. Compl. at ¶¶ 233-238. Further, the Complaint concedes that Novartis submitted the allegedly withheld references that disclosed the mesylate salt form of imatinib *before* the patent was issued. *Id*. at ¶¶ 243-249.

Additionally, Plaintiffs' theory cannot be reconciled with the Supreme Court's decision in *FTC v. Actavis*, 133 S. Ct. 2223 (2013). The Court there held that only settlements providing for "large, unjustified" payments trigger antitrust scrutiny, and stated that parties to Hatch-Waxman litigation may settle in other ways, such as by permitting the generic to enter before patent expiration, precisely what Plaintiffs accuse Defendants of doing here. *Id.* at 2237. The Supreme Court's framework, confining scrutiny to a carefully limited category of potentially anticompetitive settlements, strikes a balance between the antitrust laws and the public policy favoring the settlement of litigation. In contrast, under Plaintiffs' proposed paradigm, any settlement could be challenged, with or without a "large, unjustified" payment, based only on an unsupported assertion that the patent owner settled to avoid patent invalidation; and any patent, regardless of taint from a prior proceeding, could be challenged by parties denied standing to do so under the patent laws merely by folding their invalidity claim into a conclusory sham litigation claim. This is an untenable result. The Complaint should be dismissed.

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in Defendants' Memorandum in support of the Motion to Dismiss, Defendants respectfully request this Court dismiss Plaintiffs' Complaint.

Dated:  August 31, 2015

Laura Shores
laura.shores@kayescholer.com
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
202-682-3500
202-682-3580 (fax)

William A. Zucker, BBO # 541240
wzucker@mccarter.com
Wyley Proctor, BBO # 666613
wproctor@mccarter.com
MCCARTER & ENGLISH LLP
265 Franklin Street, Boston, MA 02110
617-449-6500
617-607-9200 (fax)

William A. Zucker, BBO # 541240
wzucker@mccarter.com
Wyley Proctor, BBO # 666613
wproctor@mccarter.com
MCCARTER & ENGLISH LLP
265 Franklin Street, Boston, MA 02110
617-449-6500
617-607-9200 (fax)

Respectfully Submitted,

Novartis Pharmaceuticals Corporation and
Novartis Corporation, Defendants

By: /s/ Saul P. Morgenstern
    Saul P. Morgenstern
    saul.morgenstern@kayescholer.com
    David K. Barr
    david.barr@kayescholer.com
    Mark D. Godler
    mark.godler@kayescholer.com
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
212-836-8000
212-836-8689 (fax)

Novartis AG

By: /s/ Grant J. Esposito
    Grant J. Esposito
    gesposito@mofo.com
    Jessica Kaufman
    jkaufman@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
212-468-8000
212-468-7900 (fax)

11

## **CERTIFICATE OF SERVICE**

   I, Wyley Proctor, hereby certify that on this 31st day of August, 2015, the within document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

<div style="text-align:right">*/s/ Wyley Proctor*</div>